

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-1998

# Montgomery v. De Simone

Precedential or Non-Precedential:

Docket 97-5179

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Montgomery v. De Simone" (1998). *1998 Decisions.* Paper 249.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/249

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 16, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5179

ROSEMARY MONTGOMERY,

        Appellant

v.

JEFFREY DE SIMONE, PTL. a/k/a Joseph De Simone,
PTL; TOWNSHIP OF BRICK; COUNTY OF OCEAN; BRICK
TOWNSHIP POLICE DEPARTMENT; JOHN DOE,
Individually and as an employee of the Brick Township
Police Department

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 95-cv-00528)

Argued
March 24, 1998

Before: MANSMANN, ROTH and McKEE, Circuit Judges.

(Filed October 16, 1998)

        William J. Farley, Jr., Esquire
         (Argued)
        2517 Highway 35 South
        Valley Park Professional Center
        Manasquan, NJ 08736

         Counsel for Appellant

Michael E. Wilbert, Esquire (Argued)
Ben A. Montenegro, Esquire
Wilbert & Montenegro
531 Burnt Tavern Road
P.O. Box 1049
Brick Town, NJ 08724

 Counsel for Appellee
 Joseph De Simone

Steven N. Cucci, Esquire
Cucci & McCarthy
1500 Route 88 West
P.O. Box 1609
Brick, NJ 08723

 Counsel for Appellee:
 Township of Brick and
 Brick Township Police Department

OPINION OF THE COURT

MANSMANN, Circuit Judge.

Rosemary Montgomery appeals from the entry of summary judgment against her in her suit brought pursuant to 42 U.S.C. S 1983 which arises out of the events surrounding her arrest on September 30, 1992. Montgomery alleges that Officer Jeffrey De Simone did not have probable cause to stop and arrest her for speeding and drunk driving. She accordingly brought several section 1983 claims against Officer De Simone, including a claim based on malicious prosecution.

In this appeal, we are asked to determine whether Montgomery's convictions, which were overturned upon de novo review, conclusively establish probable cause and necessarily negate any possibility that Montgomery could establish her section 1983 malicious prosecution claim. We hold that they do not. Accordingly, because we find that Montgomery has raised a genuine issue of material fact as to probable cause, we will reverse the district court's grant of summary judgment in favor of Officer De Simone on

2

Montgomery's section 1983 malicious prosection claim and will remand this case for further proceedings.

In addition, we find that, as a matter of law, the two year limitations period for Montgomery's section 1983 false arrest and false imprisonment claims began to run on the night of Montgomery's arrest and that her claims against the municipal defendants fail because Montgomery's allegations are insufficient to establish municipal liability. Accordingly, we will affirm the district court's order dismissing those claims.

I.

On September 30, 1992, Officer Jeffrey De Simone stopped Rosemary Montgomery, arrested her and charged her with speeding, driving while intoxicated, and refusing to take a breathalyzer test. At Montgomery's municipal hearing, Officer De Simone testified that he stopped Montgomery because she was traveling at approximately 55 m.p.h. in a 40 m.p.h. zone. De Simone testified that he estimated Montgomery's speed prior to the stop based on his own observation and a radar reading. According to De Simone, when he stopped Montgomery he detected a strong odor of alcohol on her breath. De Simone testified that Montgomery had difficulty locating her license in her wallet, could not open the glove box and became frustrated when De Simone opened the glove box with ease. According to De Simone, Montgomery could not recite the alphabet when asked to do so and failed two field sobriety tests. De Simone stated that Montgomery's eyes were "watery," her speech was "slightly slurred," and that "she was swaying and staggering" when standing and walking.

De Simone further testified that during the stop, a second car pulled up to ask directions. De Simone then instructed Montgomery to drive her car across the road to a vacant parking lot so that he might attend to the second car. He subsequently drove to where she was parked and took her to the police station. At the police station De Simone advised Montgomery for the first time that she was under arrest, read her her Miranda rights, and asked her to take a breathalyzer test. Montgomery refused the test.

3

Montgomery's testimony at her municipal trial painted a dramatically different picture of the events surrounding her arrest. According to Montgomery, she had just returned from a transcontinental flight and had met a friend for dinner. She testified, and her friend corroborated, that she did not have any alcoholic beverages with dinner. She further testified, and her friend corroborated, that she ordered one Irish coffee after dinner and that the bartender had refilled her same cup with regular coffee after she finished most of the Irish coffee. Montgomery's friend further testified that Montgomery did not appear to be intoxicated and that they parted company at approximately 11:20 p.m.

Montgomery testified that after leaving her friend's house, she had been stopped at a red light which was located less than one tenth of a mile from the intersection where De Simone testified she was traveling at 55 m.p.h. In her deposition in this case, Montgomery further testified that she could not have been exceeding the speed limit in that short distance in her Hyundai and that she knows she was not speeding. She also testified that De Simone lied at her municipal trial.

At her municipal trial, Montgomery testified that she did have trouble finding her license for De Simone because it was mixed in with receipts from her overseas trip. She also testified that she had trouble opening the glove compartment because it always sticks but that she eventually opened it herself without the help of De Simone. According to Montgomery, she recited the alphabet correctly when asked but De Simone never asked her to leave her vehicle for sobriety tests.

Montgomery testified that at one point during the stop De Simone stated "I shouldn't be doing this but would you pull across to behind Wall Street and wait for me?" Montgomery testified that she was unaware of anyone stopping and asking for directions. After she waited in the parking lot for about five to ten minutes, De Simone pulled up behind her with no overhead lights on. De Simone got out of the car and his demeanor changed. De Simone asked Montgomery if she liked policemen and if she dated them. Montgomery testified that she was very uncomfortable and tried to

4

change the subject and that De Simone then offered her a ride home. She told De Simone that he would have to leave his jurisdiction to give her a ride and he then offered to take her to the station to make a phone call. Montgomery testified that De Simone's demeanor again changed and he became sullen. When they arrived at the station, De Simone advised Montgomery for the first time that she was under arrest and read her her rights. Another of Montgomery's friends picked her up at the police station around 2:00 a.m. and testified that Montgomery did not appear drunk and that Montgomery told her that she had only had two Irish coffees that night.

The municipal court judge found that there was probable cause for the stop and the arrest for drunk driving based entirely upon De Simone's testimony. In addition, after hearing all the testimony offered, the municipal judge found Montgomery guilty of speeding, drunk driving, and refusing to take a breathalyzer test. Montgomery appealed her convictions.

On February 4, 1994, a trial de novo was held in the Superior Court of New Jersey. The court reversed Montgomery's convictions entering not guilty verdicts on all charges. The Superior Court judge expressed doubt as to whether Montgomery was speeding, given her testimony that she had been stopped at a light just a short distance from where De Simone claimed she was exceeding the speed limit. In addition, the judge expressed doubt as to whether De Simone actually thought Montgomery was drunk given that De Simone ordered her to drive her car across four lanes of traffic to a vacant parking lot after she allegedly failed several sobriety tests.

On February 1, 1995, Montgomery filed a complaint in the District Court of New Jersey alleging a section 1983 claim for malicious prosecution, section 1983 false arrest and false imprisonment claims arising out of her arrest and temporary detention on September 30, 1992, section 1983 claims against the township and police department (collectively the "municipal defendants") based on De Simone's actions, and several state law claims relating to her arrest. On March 11, 1997, the district courtfiled an order holding that (1) Montgomery's section 1983 claim for

5

malicious prosecution failed as a matter of law because the municipal judge had reasonably determined that probable cause existed for the arrest; (2) the two year statute of limitations for Montgomery's section 1983 false arrest and false imprisonment claims began to run on the date of her arrest and those claims were therefore time barred; and (3) Montgomery's section 1983 claims against the municipal defendants should be dismissed because Montgomery failed to produce evidence that would raise a genuine issue of material fact on those claims.1 Montgomery timely filed this appeal.2

II.

In order to prevail on her section 1983 malicious prosecution claim, Montgomery must establish, among other things, an absence of probable cause for the initiation of the proceedings against her. See Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989)(citing Lee v. Mihalich, 847 F.2d 66, 69–70 (3d Cir. 1988)). The district court granted summary judgment on Montgomery's section 1983 malicious prosecution claim based upon the premise that the municipal judge's finding of probable cause for her arrest negated any possibility that Montgomery could establish an absence of probable cause for purposes of her section 1983 malicious prosecution claim.

We have held that the question of probable cause in a section 1983 damage suit is one for the jury. Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir. 1978). Summary judgment on Montgomery's malicious prosecution claim

_____

1. The district court also held that Montgomery's state law claims against De Simone were time barred and that her state law claims against the municipal defendants were barred by governmental immunity. Montgomery has not appealed these rulings.

2. The district court properly exercised jurisdiction over Montgomery's section 1983 action and supplemental claims pursuant to 28 U.S.C. SS 1331, 1343(a)(3), 1367(a)(1994). We have appellate jurisdiction over the district court's order granting summary judgment in favor of the defendants pursuant to 28 U.S.C. S 1291(1994). We exercise de novo review over the district court's order granting summary judgment. Boneberger v. Plymouth Township, 132 F.3d 20, 23 (3d Cir. 1997).

therefore is only appropriate if taking all of Montgomery's allegations as true and resolving all inferences in her favor, a reasonable jury could not find a lack of probable cause for Montgomery's stop and arrest. Deary v. Three Un-named Police Officers, 746 F.2d 185, 191 (3d Cir. 1984). Accordingly, we must examine the evidence presented by Montgomery on probable cause and, applying any appropriate presumptions, determine whether Montgomery has raised a genuine issue of material fact as to whether Officer De Simone had probable cause for her stop and arrest.

A.

At common law, a conviction presumptively establishes the existence of probable cause absent a showing that the conviction was achieved through perjury, fraud or corruption. See generally Lind v. Schmid, 337 A.2d 365, 370 (N.J. 1975)(stating that a conviction by a magistrate, even if subsequently overturned, may raise a rebuttable presumption of probable cause for purposes of a malicious prosection claim). Derived from the Restatement of Torts,[3] the rule is based on the reasoning that if a factfinder determined that the accused was guilty beyond a reasonable doubt, the person who initiated the proceedings must have had reasonable grounds for so doing. See Restatement (Second) of Torts S 667(1) cmt. b. (1977). The rule was developed to establish probable cause in a malicious prosecution action against a private citizen, however, not probable cause for arrest by a police officer. Bergstralh v. Lowe, 504 F.2d 1276, 1278 (9th Cir. 1974). Moreover, not all state courts adhere to this rule. See generally C.C. Marvel, Annotation, Conclusiveness, as evidence of probable cause in malicious prosecution action,

_____

3. The Restatement of Torts provides, in relevant part, that:

> The conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes
> the existence of probable cause, unless the conviction was obtained
> by fraud, perjury or other corrupt means.

Restatement (Second) of Torts S 667(1)(1977).

of conviction as affected by the fact that it was reversed or set aside, 86 A.L.R. 2d 1090 (1962) (discussing position taken by various state courts).

The Supreme Court has not yet made clear whether common law rules, such as this Restatement rule, apply to section 1983 actions. In determining whether a certain common law concept governs a section 1983 action, the Court has been guided by the extent to which the common law rule is rooted in history and reason and whether the policies it serves are compatible with the purposes of section 1983. See Owen v. City of Independence, Missouri, 445 U.S. 622, 638 (1980); City of Newport v. Facts Concerts, Inc., 453 U.S. 247, 259 (1981). As explained by the Court:

> [B]ecause the [Civil Rights Act] was designed to expose state and local officials to a new form of liability, it would defeat the promise of the statute to recognize any preexisting [common law concept] without determining both the policies that it serves and its compatibility with the purposes of S 1983.

City of Newport, 453 U.S. at 259. Although in City of Newport the Court expressed its approval of this analysis in relation to common law immunity, we find this approach equally appropriate in determining whether a general common law rule should be applied to section 1983 actions.

In Cameron v. Fogarty, 806 F.2d 380 (2d Cir. 1986), our sister court of appeals for the Second Circuit followed City of Newport and held that a rule similar to the Restatement rule applied to section 1983 actions. Where the plaintiff had been convicted and the conviction had not been overturned, the common law principle that a conviction gives the police officer a complete defense barred the plaintiff 's section 1983 false arrest claim. Id. at 387–89. The court reasoned that the availability of this defense does not undermine the goals of section 1983 because the exclusionary rule is sufficient to deter law enforcement officers from making an arrest without probable cause. Id. at 388. The court concluded that application of the common law rule to section 1983 actions struck "the proper accommodation between the individual's interest in

8

preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals . . . ." Id.

In Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989), we criticized the policy considerations underlying Cameron. We expressed doubt as to whether the rule announced in Cameron "reflect[s] the `proper accommodation between the individual's interest in preventing unwarranted intrusion into his liberty and society's interest in encouraging the apprehension of criminals' " in light of the availability of qualified immunity as a defense in section 1983 actions. Rose, 871 F.2d at 351.

We hold today that the Restatement's rule that an overturned municipal conviction presumptively establish probable cause contravenes the policies underlying the Civil Rights Act and therefore does not apply to a section 1983 malicious prosecution action. The central aim of the Civil Rights Act is to protect citizens from the misuse of power by individuals cloaked with the authority of state law. Owen, 445 U.S. at 650. As noted by the Court, in enacting the Civil Rights Act:

> Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts . . . . The very purpose of S 1983 was to interpose the federal courts between the States and the people, as the guardians of the people's federal rights -- to protect the people from unconstitutional action under color of state law . .. ."

Mitchum v. Foster, 407 U.S. 225, 242 (1972). Applying a presumption of probable cause in a section 1983 action on the sole basis of a municipal conviction that has subsequently been overturned undermines one of the Civil Rights Act's raisons d'etre, i.e., to interpose the federal courts, as guardians of federal rights, between the authority of the states and the people. Accord Heck, 512

9

U.S. at 496 (Souter, J., concurring)(discussing generally the Restatement rule and noting that the Court disclaims the "untenable" position that a conviction "wipes out a person's S 1983 claim for damages for unconstitutional conviction or postconviction confinement.").

B.

In the absence of a presumption of probable cause arising from the municipal conviction, the issue of whether De Simone had probable cause to stop and arrest Montgomery rests entirely upon the credibility of the witnesses. According to Montgomery, she had only had one drink on the night in question and could not have been exceeding the speed limit. In addition, Montgomery alleges that De Simone lied at her trial and that his motive for arresting her was unrelated to either her speed or her alleged intoxication. Taking all of Montgomery's allegations as true and resolving all inferences in her favor as we must, we find that a reasonable jury could conclude that De Simone did not have probable cause to stop or to arrest Montgomery. Montgomery therefore has raised a genuine issue of material fact as to probable cause and summary judgment on her section 1983 malicious prosecution claim was accordingly inappropriate.

III.

The parties agree that a two-year limitations period applies to Montgomery's section 1983 claims. 4 The parties disagree, however, as to when the two-year limitations period began to run on Montgomery's section 1983 false arrest and false imprisonment claims. The defendants contends that the limitations period began to run on these

_____

4. In Wilson v. Garcia, 471 U.S. 261, 276 (1985), the Court held that for S 1983 actions, courts should apply the state statute of limitations applicable to personal injury torts. We have since held that New Jersey's two-year limitations period on personal injury actions, N.J.S.A. 2A: 14-2, applies to a civil rights claim under S 1983. Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). The parties are therefore correct in assuming that a two-year limitations period applies to Montgomery's S 1983 claims.

claims on the date of Montgomery's arrest. Montgomery, on the other hand, contends that the statute of limitations period did not begin to run on these claims until her criminal charges were resolved in her favor.

It is axiomatic that under federal law, which governs the accrual of section 1983 claims, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). A claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more. Heck v. Humphrey , 512 U.S. 477, 484 (1994)(citing W. Page Keeton et al., Prosser and Keeton on Law of Torts S119, at 888 (5th ed. 1984)). In addition, Montgomery's section 1983 false imprisonment claim relates only to her arrest and the few hours she was detained immediately following her arrest. See  App. 74-76 (Complaint). Montgomery therefore reasonably knew of the injuries that form the basis of these section 1983 claims on the night of her arrest. Accordingly, under Gentry, the two-year limitation period for Montgomery's section 1983 false arrest and false imprisonment claims began to run on September 30, 1992, the night of Montgomery's arrest and detention. Because Montgomery filed her action on February 1, 1995, more than two years after the date of her arrest, the district court was correct in dismissing Montgomery's section 1983 false arrest and false imprisonment claims as time barred.[5]

_____

5. Montgomery argues that under Heck v. Humphrey, 512 U.S. 477 (1994), these claims only accrued after her criminal charges were resolved in her favor. In Heck, the Court held that a section 1983 claim for damages attributable to an unconstitutional conviction or sentence does not accrue until that conviction or sentence has been invalidated. Heck, 512 U.S. at 489-90. The Court also noted, however, that if a successful claim would not demonstrate the invalidity of any outstanding criminal judgment, it should be allowed to proceed. Id. at 487. Because a conviction and sentence may be upheld even in the absence of probable cause for the initial stop and arrest, wefind that Montgomery's claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in Heck which necessarily implicate the

11

IV.

Under 42 U.S.C. S 1983, municipal defendants cannot be held liable under a theory of respondeat superior; municipal liability only arises when a constitutional deprivation results from an official custom or policy. Monell v. Department of Social Servs. of City of New York, 436 U.S. 658, 691-94 (1978). Furthermore, a municipality's failure to train police officers only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). We have held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. See Boneberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

Montgomery's claims against the municipal defendants rest on allegations that these defendants are directly responsible for De Simone's action and that they failed to adequately train, discipline or control De Simone which give him the opportunity to harass and unlawfully detain Montgomery. To the extent that these claims are based upon a respondeat superior theory, they are barred under Monell. In addition, Montgomery's failure to train, discipline or control claim seems to be based on the contention that De Simone was never trained not to sexually harass the female public and was not disciplined as a result of the incident involving Montgomery. Montgomery, however, points to no inadequacy in De Simone's police training

_____

validity of a conviction or sentence. See Mackey v. Dickson, 47 F.3d 744, 746 (5th Cir. 1995)(stating that "[i]t is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."). Accordingly, we read Heck to be consistent with our determination that Montgomery's false arrest and false imprisonment claims accrued on the night of her arrest.

12

program. In addition, she has failed to allege any action or inaction by the municipal defendants that could be interpreted as encouraging De Simone's offensive actions. Because Montgomery's allegations do not implicate the type of deliberate indifference required for section 1983 municipal liability, the district court was correct in granting summary judgment in favor of the municipal defendants on Montgomery's section 1983 claims.

V.

For the foregoing reasons, we will affirm the district court's order dismissing Montgomery's section 1983 false arrest, false imprisonment, and municipal liability claims. We will reverse that portion of the district court's order dismissing Montgomery's section 1983 malicious prosecution claim against Officer De Simone because Montgomery has raised a genuine issue of material fact as to probable cause and remand for further proceedings.

13

ROTH, Circuit Judge, Dissenting:

I join in parts I, III, and IV of the majority opinion which holds that Montgomery's false arrest and false imprisonment claims are time-barred and which affirms summary judgment in favor of the municipal defendants on the S 1983 claims. I do not agree, however, with the majority's conclusion in Part II that, in an action for malicious prosecution under S 1983, an overturned conviction does not presumptively establish probable cause.

The majority holds that such a rule contravenes the policies underlying the Civil Rights Act. I maintain, to the contrary, that the Restatement of Torts/Common Law rule should apply. Under this rule, unless a conviction is contrary to established law or has been obtained by fraud, perjury or other corrupt means, such a conviction, even if it is ultimately overturned, has still presumptively established probable cause to pursue the original prosecution. I believe that the majority's exception for actions under S 1983 should not be extended beyond the already recognized exceptions. Indeed, with the availability of these Restatement/Common Law exceptions, the purpose of S 1983 is not defeated.

As the majority states, in order to prevail on a claim of malicious prosecution under S 1983, a plaintiff must establish, among other things, the absence of probable cause for the original proceeding brought against the plaintiff. Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989) (citing Lee v. Mihalich, 847 F.2d 66, 69-70 (3d Cir. 1988). In reversing the district court, the majority concludes that the common law rule, establishing a presumption of probable cause from a conviction later reversed, should not apply to S 1983 actions.

The majority acknowledges that the case law reflects exceptions to the common law rule so that a conviction subsequently overturned establishes only a rebuttable presumption of probable cause. See Lind v. Schmid, 337 A.2d 365 (N.J. 1975). The common law rule is based on the concept that, if a fact finder determines guilt beyond a reasonable doubt, there must have been probable cause for doing so unless it is later determined that the conviction was fraudulently or corruptly obtained. Id.

14

The majority does not, however, adopt the Restatement/Common Law rebuttable presumption. Instead, they conclude that, when a malicious prosecution action is brought under S 1983, an overturned municipal court conviction does not presumptively establish probable cause. Majority at 8-9. Because I conclude that the purposes of S 1983 are not offended by application of a rebuttable presumption and because I find that the district court committed no legal error in applying the common law rule in its summary judgment determination, I respectfully dissent.

In this case, Montgomery's municipal court conviction was overturned upon a trial de novo by the state superior court. After deeming radar gun evidence inadmissible, the superior court judge concluded that Montgomery could not be found guilty beyond a reasonable doubt. If, however, a failure to find guilt beyond a reasonable doubt could negate a finding of probable cause to initiate the proceeding, every successful appeal would prompt a claim of malicious prosecution.

In its analysis, the district court examined the effect of the overturned municipal conviction on the malicious prosecution claim. The court relied on the common law rule to conclude that if a magistrate's determination of guilt was reasonably reached (even if later overturned), the presumption of probable cause should not be disturbed unless rebutted with evidence that the conviction was obtained fraudulently. See, e.g., Lind at 370. The district court then found that the New Jersey magistrate had relied both on radar evidence and on Officer De Simone's testimony of a visual estimate of a speeding violation and had reasonably concluded that there was probable cause to stop Montgomery and to find her guilty of speeding. Although the superior court ultimately deemed the radar evidence to be inadmissible because a proper foundation had not been laid, the district court reasoned, correctly I believe, that the inadmissibility of the radar evidence should have no effect on whether it was reasonable to prosecute Montgomery in the first place.

The District Court's dismissal of the malicious prosecution claim hinged on Montgomery's failure to

establish such an absence of probable cause. I believe that the reversal of the municipal court conviction, based on insufficient evidence to prove guilt beyond a reasonable doubt, should not be sufficient to dislodge afinding of probable cause to initiate the proceeding. A reversal for insufficient evidence is not a finding that the conviction was brought about fraudulently or corruptly.

The majority concludes to the contrary that the rebuttable presumption should not apply here because we are dealing with a claim of malicious prosecution under S 1983. The majority reasons that, since the Civil Rights Act was created to interpose the federal courts between the misuse of state authority and individuals, we would violate the goals of the Civil Rights Act if we were to allow a reversed conviction to create a presumption of probable cause in a S 1983 malicious prosecution claim.

The Second Circuit has also adopted the common law exceptions in a S 1983 action for false arrest. In Cameron v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1988), that court held that the common law rule provides a sufficient balance between individual liberty interests and societal interest in law enforcement because the exclusionary rule sufficiently deters police from arresting without probable cause. The majority points out that this Court has questioned whether the rule in Cameron reflects the "proper accommodation" between individual and societal interests. Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989). Cameron and Rose, however, both involved claims for false arrest. I conclude that the difference between a false arrest claim, in which a person may have been illegally arrested even though guilty of the prosecuted offense, is very different from a malicious prosecution claim where the propriety of the prosecution itself depends on it being initiated with probable cause. For this reason, I do not find that our concern in Rose carries over to the present situation.

The majority also quotes with approval from Justice Souter's concurrence in Heck v. Murphy where he called "untenable" the notion that a municipal conviction could "wipe out" a S 1983 claim. Heck v. Humphrey, 512 U.S. 477, 496 (1994). But, the common law rule does not wipe out a person's S 1983 claim. To the contrary, it raises a

16

rebuttable presumption of probable cause. This presumption may be rebutted with a showing that the conviction was brought about through fraud or coercion, precisely the type of conduct which S 1983 was created to guard against. Applying the common law rule of a rebuttable presumption of probable cause in the case before us does not interfere with the goals of the Civil Rights Act.

For the foregoing reasons, I respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

17