**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1763
_____

CHARLES BRACKEN,
Appellant

v.

TOWNSHIP OF MANOR; MANOR TOWNSHIP POLICE DEPARTMENT; FORMER
CHIEF ERIC S. PETROSKY, in his official capacity and as an individual, jointly and
severally

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-19-cv-00185)
District Judge: Honorable David S. Cercone

_____

Submitted Under Third Circuit L.A.R. 34.1(a) on February 1, 2024

Before: KRAUSE, PORTER, and CHUNG, *Circuit Judges*.

(Filed: September 17, 2024)

_____

OPINION*
_____

PORTER, *Circuit Judge*.

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Charles Bracken, an off-duty constable, entered his daughter's school in plain clothes while visibly armed. He was arrested and later charged with the misdemeanors of possessing a weapon on school property and disorderly conduct, but the charges were later withdrawn. Bracken asserts a false arrest claim under 42 U.S.C. § 1983, but we will affirm because there was probable cause to arrest him.

I[1]

A

Charles Bracken married Laurie Bracken in 2000 and they had three children together. Near the end of 2016, the couple became estranged and physically separated. Around January 2017, Charles notified Laurie that he intended to divorce her. Then things took a turn for the worse. That month, Laurie sent text messages to Charles threating to blow up the house with their children inside. A few weeks later, Laurie obtained a temporary protection from abuse order against Charles. The order did not contain a gun restriction, nor did it impose any custody restrictions.

On the morning of February 21, 2017, Charles Bracken entered Lenape Elementary School (the "School") to pick up his minor daughter "L.B." School staff were aware of the Brackens' contentious divorce. At the time, Bracken was a constable for Kittanning Township, but he was not wearing identifying insignia or acting in any law enforcement capacity.

---

[1] Because we write for the parties only, we do not recite the facts or procedural history in detail. However, we note that much of Bracken's briefing violates this court's rules against *ad hominem* attacks. *See* L.A.R. 28.1(d).

Four days before Charles entered the School, Laurie informed one of L.B's teachers that Charles had threatened to "come to school at any time and take [L.B.], and [L.B.] would never see [her] mother." App. 218. The same day, the School's guidance counselor emailed L.B.'s teachers and staff explaining the situation and that L.B. was "worried [her] dad will follow through with his statement." App. 220.

Four days later, Bracken arrived at the school office and asked to pick up L.B. Bracken's arrival was unannounced, contravening school procedures. On his hip, Bracken carried a loaded firearm in a holster. He also wore a belt with handcuffs and a radio attached. But he left his vest with a "constable" insignia in his car.

Bracken's arrival was met with alarm. School personnel called Laurie, who in turn dialed 911. This emergency call caused Chief of Police Eric Petrosky to be dispatched to the school. Meanwhile, Bracken showed the School's guidance counselor the threatening text messages he had received from Laurie. The School's principal contacted Mike Bramlet, head of security for the school district, and told him to drive to the School immediately. Bramlet knew Bracken personally and knew that he was a constable. On the way, Bramlet called Petrosky and explained the situation.

Once Petrosky arrived, he spoke with School personnel, Laurie, and Bracken. Suspecting that Bracken had committed a crime, Petrosky said that he would take him to the police station. Petrosky then drove Bracken to the Manor Township police station. While Bracken was in custody, Petrosky and the District Attorney's office deliberated on what charges, if any, were warranted. He was released from custody the same day, without any charges being filed.

3

In November 2017, Bracken was mailed two misdemeanor charges for possession of a weapon on school property and disorderly conduct, along with a summons for a pre-trial hearing scheduled for January 9, 2018. 18 Pa. C. S. § 912(b); 18 Pa. C. S. § 5503(a)(1). The hearing was continued, and the charges were later withdrawn.

Bracken sued the Township of Manor (the "Township") and Petrosky (collectively "Defendants") under 42 U.S.C. § 1983 for false arrest and malicious prosecution in violation of the Fourth Amendment.[2] He also asserted claims for violation of due process under the Fourteenth Amendment. And he sued for malicious prosecution under Pennsylvania law. The District Court granted summary judgment to the Defendants on each claim.

Bracken appealed.[3]

## II

We exercise plenary review over a grant of summary judgment. *Jefferson v. Lias*, 21 F.4th 74, 77 n.1 (3d Cir. 2021). "Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Mack v. Yost*, 63 F.4th 211, 227 n.14 (3d Cir. 2023) (internal quotation marks omitted and quoted source omitted). "We view the evidence in the light most favorable to

---

[2] Bracken also brought claims against the Manor Township Police Department, but the District Court dismissed those claims, along with Bracken's state-law claim against the Township. He does not appeal those dismissals.

[3] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 and we have jurisdiction over its final judgment under 28 U.S.C. § 1291.

the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence." *Id.* (internal quotation marks and quoted source omitted).

On appeal, Bracken advances only his Fourth Amendment false arrest claim and a procedural argument for which there is no decision for us to review.[4] His false arrest claim fails because there was probable cause to arrest him when he entered the School with a weapon. We will affirm.

A

A cause of action under § 1983 has two elements. First, a plaintiff "must demonstrate a violation of a right secured by the Constitution and laws of the United States." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (internal quotation marks omitted) (quoted source omitted). Second, the plaintiff must show "that the alleged deprivation was committed by a person under color of state law." *Id.* (citation omitted).

"We have held that the question of probable cause in a section 1983 suit is one for the jury." *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998) (citation omitted). So, summary judgment for the Defendants "is only appropriate if 'a reasonable jury could not find a lack of a probable cause.' " *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Montgomery*, 159 F.3d at 124) (citation omitted).

Probable cause is a standard "not readily, or even usefully, reduced to a neat set of legal rules." *Ornelas v. United States*, 517 U.S. 690, 695–96 (1996) (quoting *Illinois v.*

---

[4] Bracken's Fourth Amendment claims relating to the seizure of his weapon and malicious prosecution, Fourteenth Amendment claims, and state law claims are therefore forfeited. *Barna v. Bd. Of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 146–47 (3d Cir. 2017).

*Gates*, 462 U.S. 213, 232 (1983)). Instead, it is a "fluid concept[.]" *Id.* at 696. The evidentiary standard for probable cause is "significantly lower than the standard which is required for conviction." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) (citation omitted). Accordingly, if there is a "fair probability that the person committed the crime at issue[,]" then there is probable cause. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (internal quotation marks and quoted source omitted). This inquiry is not affected by the subjective beliefs of the official. *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

The parties agree that Bracken's false arrest claim turns on whether there was probable cause to arrest him. Here, there was more than a "fair probability" that Bracken committed a crime. *Wilson*, 212 F.3d at 789. Pennsylvania law criminalizes the "possess[ion] [of] a weapon in the buildings of, on the grounds of, or in any conveyance providing transportation to or from any elementary school[.]" 18 Pa. C. S. § 912(b). Pennsylvania courts have held that § 912(b) is not a strict liability offense and that the State must show, at a minimum, a mens rea of recklessness. *Commonwealth v. Giordano*, 121 A.3d 998, 1006 (Pa. Super. Ct. 2015).

Bracken entered the School unannounced with his weapon. The parties agree that he did not do so to provide security for the school or to serve a warrant. Bracken does not argue that he did not know he was bringing a weapon onto school premises, nor could he plausibly do so. So, mens rea is not at issue. Similarly, there is no ambiguity that Bracken entered a building within the meaning of an "elementary or secondary publicly-funded

6

educational institution." 18 Pa. Cons. Stat. § 912(b); *see also Giordano*, 121 A.3d at 1004–05 (holding that the statute encompasses administrative buildings where students are instructed). Reading these undisputed facts in the light most favorable to Bracken, and because the evidentiary standard for probable cause is "significantly lower than the standard which is required for conviction," *Wright*, 409 F.3d at 602 (citation omitted), Petrosky had probable cause to arrest Bracken for violating § 912(b).[5]

Bracken's counterarguments are unavailing.[6] First, Bracken argues that the guidance counselor's testimony should not have been considered in the District Court's probable cause analysis. He asserts the guidance counselor lied about the effect of his arrival on the School's staff to gain attention. There is conflicting testimony on how the staff responded to Bracken's arrival, but that evidence is immaterial for Petrosky's probable cause determination. Section 912(b) requires only that Bracken "possess[ed] a weapon . . . on the grounds of . . . any elementary school[.]" The statute does not require a specific level of alarm or concern from others. And in making his probable cause determination, Petrosky "was not required to undertake an exhaustive investigation in

---

[5] For false arrest claims involving multiple charges, establishing probable cause on one charge insulates the defendant from liability. *Startzell v. City of Phila.*, 533 F.3d 183, 204 n.14 (3d Cir. 2008). So we do not assess the disorderly conduct charge under § 5503(c).
[6] On appeal, Bracken no longer argues that the affirmative defense provided by § 912(c) applies to him. We therefore do not reach the issue.

In any event, the possibility that Bracken had an affirmative defense does not change the result. To the extent that an affirmative defense can ever negate probable cause, the arrestee "must only show facts which support the defense, but also that a reasonable police officer would know of these facts and conclude that [a crime] had not been committed." *Radich v. Goode*, 886 F.2d 1391, 1396 (3d Cir. 1989). Bracken does not show such facts here.

7

order to validate the probable cause that, in his mind, already existed." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000) (citations omitted). That the guidance counselor may have overreacted does not render Petrosky's probable cause determination unreasonable. So even drawing all inferences about the response of school staff in his favor, Bracken has not presented the genuine issue for trial that his claim needs to survive summary judgment. *See Mack*, 63 F.4th at 227 n.14.

Next, Bracken asserts that an affidavit associated with a purported "arrest warrant" contained falsehoods and omissions which contributed to his unlawful arrest. But this affidavit was not offered in support of an arrest warrant. Indeed, there is nothing in the record suggesting the existence of an arrest warrant. Bracken's discussion of our precedent relating to false statements or omissions in arrest warrants is thus a red herring. To the extent that the affidavit from Bracken's son that he also cites relates to his false-arrest claim, it only offers speculation about Petrosky's personal motives in making the arrest. Even if this speculation was vindicated at trial, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. 806 at 813. The District Court therefore properly concluded that Petrosky had probable cause to arrest Bracken, defeating Bracken's false arrest claim.[7]

B

---

[7] Because we hold that Petrosky had probable cause to arrest Bracken, we do not reach the issue of whether Petrosky is entitled to qualified immunity. *See, e.g.*, *Thomas v. Indep. Twp.*, 463 F.3d 285, 294 (3d Cir. 2006).

Bracken's final argument is procedural. Defendants' counsel failed to timely answer Bracken's amended complaint, which was filed on February 25, 2019. Bracken requested that the Clerk enter default on this basis under Fed. R. Civ. Proc. 55(a). However, when the Clerk did not enter default, Bracken neither moved for an order that the Clerk do so nor for the District Court to enter default judgement under Fed. R. Civ. Proc. 55(b)(2). Therefore, the District Court rendered no decision for us to review. In any event, the District Court did not abuse its discretion in not entering such an order. Defendants actively participated in the litigation throughout the period of purported default and promptly cured their error. *See United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 664 n.2 (3d Cir. 2007); Charles Alan Wright & Arthur R. Miller, 10A Fed. Prac. & Proc. Civ. § 2682 (4th ed. 2024).

\* \* \*

For these reasons, we will affirm.