**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 21-1246 & 23-1792
_____


JORGE RIVERA-GUADALUPE

v.

CITY OF HARRISBURG, d/b/a Bureau of Police;
JACOB PIERCE, in his individual and official capacity as a
Detective with the City of Harrisburg, Bureau of Police;
DAUPHIN COUNTY DISTRICT ATTORNEY'S OFFICE;
ESQ. MICHAEL SPROW, in his individual and official
capacity
as the First Assistant District Attorney with the Dauphin
County
District Attorney's Office


City of Harrisburg and Jacob Pierce,
                 Appellants in No. 21-1246

Jacob Pierce,
                 Appellant in No. 23-1792
_____

On Appeal from the United States District Court

for the Middle District of Pennsylvania
(D.C. No. 1-19-cv-01400)
District Judge: Hon. Sylvia H. Rambo

_____

Argued on March 14, 2022

Before: JORDAN, KRAUSE, and PORTER, *Circuit Judges*

(Opinion filed: December 24, 2024)


Kimberly A. Boyer-Cohen  [**ARGUED**]
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

*Counsel for Appellants*


Leticia C. Chavez-Freed [**ARGUED**]
Chavez-Freed Law Office
2600 N. 3rd Street, 2nd Floor
Harrisburg, PA 17110

Frank J. Lavery, Jr.
Lavery Law
225 Market Street, Suite 304
Harrisburg, PA 17101

*Counsel for Appellees*

————————————

OPINION OF THE COURT

————————————

**KRAUSE**, *Circuit Judge*.

We deny officers qualified immunity for violating clearly established constitutional rights—not for their failure to read tea leaves. This past year, the Supreme Court held in *Chiaverini v. City of Napoleon* that "the presence of probable cause for one charge does not automatically defeat a Fourth Amendment malicious-prosecution claim alleging the absence of probable cause for another charge." 602 U.S. 556, 561 (2024). But was that right clearly established when Detective Jacob Pierce, the Appellant in this case, arrested Appellee Jorge Rivera-Guadalupe in 2017? No, we conclude, because although we anticipated the holding of *Chiaverini* nearly twenty years ago in *Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007), tension between *Johnson* and *Wright v. City of Philadelphia*, 409 F.3d 595 (3d Cir. 2005), continued to produce confusion within our circuit that persisted until *Chiaverini*. Accordingly, we will reverse the District Court's denial of qualified immunity and remand with instruction to dismiss on that basis.

# I.     Background[1]

In May of 2017, Rivera-Guadalupe was living in a one-room unit in a rooming house in Harrisburg, Pennsylvania. This was not a pleasant dwelling. In his complaint, he called it "a noisy place" where "visitors were always coming and going; drugs and alcohol were rampant; and people often congregated in the hallways." App. 67. So, when unknown people mugged and robbed Rivera-Guadalupe on May 21, his close friend, Christopher Valkosak, came to stay with him at the rooming house the next day in case trouble returned.

Return it did. Around eleven o'clock the next evening, Valkosak was standing in the doorway of Rivera-Guadalupe's unit, facing the exterior hallway, when, in his telling, two strangers suddenly appeared. One of the men—"a dark-skinned male in a black hoodie"—shot Valkosak in the stomach. App. 68. According to Valkosak, Rivera-Guadalupe then fetched a gun from under his mattress and left the room, presumably to chase the shooter.

Det. Pierce was assigned as the crime's lead investigator. The day after the shooting, he interviewed a neighbor who lived down the hall from Rivera-Guadalupe and had witnessed the incident. The neighbor told Det. Pierce that a tall Black male dressed in black had been standing in the hallway outside of Rivera-Guadalupe's apartment talking to Valkosak when they began to argue and Valkosak tried to

---

[1] The Court accepts the facts pleaded by Rivera-Guadalupe as true and draws all reasonable inferences in his favor. *See Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017).

4

punch the man.  At that point, according to the neighbor, the man shot Valkosak and fled the rooming house through its rear door.

The same day he conducted that interview, Det. Pierce applied for and obtained a warrant to search Rivera-Guadalupe's room.  In his application, Det. Pierce included the neighbor's description of the shooter as a Black male but omitted various details the neighbor gave about Rivera-Guadalupe himself that were inconsistent with the description of the shooter, including that Rivera-Guadalupe is short, of Puerto Rican descent, and walks with a limp.  During the search of Rivera-Guadalupe's room, Det. Pierce found marijuana, a knife, and IDs belonging to Valkosak and Rivera-Guadalupe, though not a gun.  He arrested Rivera-Guadalupe soon after on the basis of that evidence.

At the preliminary hearing, the Assistant District Attorney called three witnesses: Valkosak, Det. Pierce, and Valkosak's roommate, who did not live in Rivera-Guadalupe's building and was not there during the shooting.  Although Det. Pierce had received a tip a few days earlier that the shooter was a different person, it does not appear he mentioned that call.[2]  Neither did the prosecution call the neighbor whom Det. Pierce had interviewed.  After hearing what testimony was presented, the judge found probable cause to hold Rivera-Guadalupe over for trial and continued his detention.

---

[2] The record does not indicate the tip's source, nor whether Det. Pierce followed up on it.

5

The DA's Office charged Rivera-Guadalupe with nine offenses, including attempted homicide and possession of marijuana. But at the outset of trial, it dropped five of those charges and proceeded to trial on just two firearms charges and the charges of robbery and theft by unlawful taking. The jury eventually acquitted Rivera-Guadalupe of all four. By that time, however, Rivera-Guadalupe had been incarcerated for over eighteen months—from May 26, 2017, through December 11, 2018.

Rivera-Guadalupe timely filed suit in the Middle District of Pennsylvania against a number of defendants, including Det. Pierce, in his individual and official capacities, for malicious prosecution, in violation of 42 U.S.C. § 1983.[3]

---

[3] In addition to claims against Det. Pierce, Rivera-Guadalupe filed suit against the City of Harrisburg d/b/a Bureau of Police, the Dauphin County District Attorney's Office, and the Dauphin County First Assistant District Attorney in his personal and professional capacity, alleging malicious prosecution in violation of the Fourth and Fourteenth Amendments of the Constitution, in violation of § 1983, in violation of state law, and that their policies violated *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978). The District Court concluded that Rivera-Guadalupe failed to state a claim against the District Attorney, and dismissed the *Monell* claims with prejudice for all defendants because, in briefing the motion to dismiss, Rivera-Guadalupe stated his intent to withdraw those claims.

While the other defendants were successful in moving to dismiss, Det. Pierce was not so fortunate.

Seeking dismissal on the basis of qualified immunity, Det. Pierce contended that there was no constitutional violation, or at least not one that was clearly established.[4] Even if there was not probable cause for some of the charges against Rivera-Guadalupe, he argued, a claim of malicious prosecution was not sustainable where at least one charge was supported by probable cause. As support for this position, he cited to

---

[4] The District Court first denied Det. Pierce qualified immunity under Federal Rule of Civil Procedure 12(g)(2) because he failed to raise the defense in his first motion to dismiss. It nevertheless addressed the substance of Det. Pierce's arguments "for the sake of streamlining the process of this lawsuit," App. 279, and, applying our decision in *Johnson*, determined that Det. Pierce was not entitled to qualified immunity. On interlocutory appeal of that order, we remanded for the limited purpose of clarifying the disposition of Pierce's motion to dismiss, as the District Court had addressed the motion's merits despite concluding that it was barred by Rule 12(g)(2). On remand, the District Court ordered Det. Pierce to renew his qualified immunity claim by filing a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). *See Oliver v. Roquet*, 858 F.3d 180, 188 n.3 (3d Cir. 2017) ("[A] defense omitted from an earlier motion may nonetheless be raised in a motion for judgment on the pleadings."); *see also* Fed. R. Civ. P. 12(h)(2). He did so, and the District Court's order denying his 12(c) motion is now before us.

*Wright v. City of Philadelphia*, where we had held that "[p]robable cause need only exist as to any offense that could be charged under the circumstances," 409 F.3d at 602 (citations omitted), to defeat a false arrest claim and then had summarily concluded that this same rationale "disposes of [plaintiff's] malicious prosecution claims," *id.* at 604.

The District Court declined to dismiss the malicious prosecution charge against Det. Pierce, reasoning that *Johnson v. Knorr*, decided a few years later, made sufficiently clear that the "any-crime" rule of *Wright* applied only to false arrest claims and not to malicious prosecution claims. It therefore held that Det. Pierce was not entitled to qualified immunity and that Rivera-Guadalupe was entitled to move forward to trial. Det. Pierce timely appealed.

**II.     Discussion[5]**

Though the burden of asserting a qualified immunity defense is on the law enforcement officer, *Thomas v. Indep. Twp.*, 463 F.3d 285, 293 (3d Cir. 2006), those officers are entitled to immunity under § 1983 "unless the plaintiff shows that the officer violated 'clearly established statutory or constitutional rights of which a reasonable person would have

---

[5] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over the denial of qualified immunity under 28 U.S.C. § 1291 and the collateral order doctrine. *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016). We review the denial of a motion for judgment on the pleadings de novo. *Zimmerman*, 873 F.3d at 417.

8

known.'" *Lozano v. New Jersey*, 9 F.4th 239, 245 (3d Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Thus, qualified immunity does not apply when the facts, taken in the light most favorable to the party claiming injury, show that the officer's conduct violated a constitutional right, *id.*, and, as an additional condition, when the right at issue— "define[d] . . . at the appropriate level of specificity," *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012))—was "clearly established," *Lozano*, 9 F.4th at 245. We may address these questions in the order we deem appropriate, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and a negative answer on either inquiry entitles a defendant to qualified immunity. *Peroza-Benitez*, 994 F.3d at 165.

Here, the parties dispute whether the existence of probable cause for some of the charges insulated Det. Pierce from suit for malicious prosecution. We therefore define the right at issue as the right to be prosecuted only for charges that are each supported by probable cause. And because the determination whether that right was "clearly established" at the relevant time will resolve this case, that is where our analysis begins and ends.

A. *Johnson* Did Not Clearly Establish the Right in Question

A right is clearly established where, "at the time of the challenged conduct, the contours of [that] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). There need not be an

9

analogous case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The question for us, then, is whether the tension between our pronouncements in *Wright* and in *Johnson* put the right to be prosecuted only on charges that are each supported by probable cause "beyond debate" at the time of Rivera-Guadalupe's prosecution. As explained below, they did not. We summarize those two cases before describing the debate that they generated.

In *Wright*, police officers who had investigated plaintiff's claim that she was sexually assaulted while intoxicated dismissed her claims as unfounded. Instead, they brought charges against her for "breaking into" the house where she was attacked immediately after it occurred to retrieve her personal belongings and collect items she thought would help the police identify her assailants. The Philadelphia Police Internal Affairs Division determined that those officers "conducted a less than proper/thorough investigation" of the allegations. *Wright*, 409 F.3d at 598. The charges against the plaintiff were dismissed, and her assailants eventually brought to justice.

When Wright brought claims against the officers for false arrest and malicious prosecution under § 1983, we held that she failed to state a claim for false arrest because there was probable cause to believe she violated the law by breaking and entering, and, applying our precedent in *Barna v. City of Perth Amboy*, 42 F.3d 809 (3d Cir. 1994), we said "[p]robable cause need only exist as to any offense that could be charged under the circumstances" to defeat a false-arrest claim. *Id.* at 602 (citing *Barna*, 42 F.3d at 819). Then, in a brief final paragraph,

10

we added that "[e]ven though our discussion of probable cause was limited to the criminal trespass claim [for false arrest], it disposes of her malicious prosecution claims with respect to all of the charges brought against her." *Id.* at 604. Citing no precedent, we stated that "[t]o prevail on [a malicious prosecution] claim, [the plaintiff] must show that the officers lacked probable cause to arrest her," *id.*, and we therefore reversed the District Court's denial of summary judgment based on qualified immunity for both the false arrest and malicious prosecution claims.

In *Johnson*, two years later, we reversed the district court's summary judgment in favor of a parole officer who had argued, based on *Wright*, that the presence of probable cause for some charges precluded the plaintiff's § 1983 claim for malicious prosecution. *Johnson*, 477 F.3d at 85. We rejected the proposition that *Wright* "establish[ed] legal precedent of such broad application that it would 'insulate' law enforcement officers from liability for malicious prosecution in all cases in which they had probable cause for the arrest of the plaintiff on any one charge." *Id.* at 83. Unlike malicious prosecution, we explained, false arrest "covers damages only for the time of detention until the issuance of process or arraignment, and not more," *id.* at 82 (quoting *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998)), so additional charges that lack probable cause place only a "limited" additional burden against the arrestee, whereas adding unjustified charges to a bill of indictment "almost surely will place an additional burden on the defendant," *id.* at 84. We thus clarified that *Wright* did not permit officers to "tack on more serious, unfounded charges for which there was not probable cause . . . for the initiation of

11

criminal proceedings merely because there was probable cause for the arrest on any charge." *Id.* (quotation marks omitted).

We also viewed *Wright* as factually distinguishable when it came to the officers' involvement in bringing charges. In *Wright*, the officer had only prepared an affidavit of probable cause for the plaintiff's arrest and was not involved with the prosecution. By contrast, the plaintiff in *Johnson* alleged that the parole agent's fabricated allegations "le[d] to the initiation of criminal proceedings." *Id.* Because the agent's "involvement in both the arrest and the initiation of criminal proceedings against Johnson was more extensive [than in *Wright*] and lasted beyond . . . the arrest itself," we declined to apply *Wright* and held that Johnson could proceed with his malicious prosecution claim, even though there was probable cause to arrest him on at least one of the charges. *Id.*

Here, examining this precedent, the District Court determined that, under *Johnson*, the right at issue was clearly established by the time of Rivera-Guadalupe's prosecution. After explicating the factual and legal distinctions between the cases, the District Court concluded every reasonable officer would have understood at that point that "the law has never opened the door for the government to charge someone with a laundry list of crimes simply because they have probable cause for one crime." App. 33. Although we had acknowledged in our en banc opinion in *Kossler v. Crisanti*, 564 F.3d 181, 193 (3d Cir. 2009) (en banc), that there was "considerable tension . . . between our treatment of the probable cause element in [*Wright*]" and in *Johnson*, the District Court dismissed "the tension between the two [as] merely specious" and our observation as merely dictum, App. 31, 34. "An issue being

12

complex," it concluded, "is not the same as it being ambiguous." App. 32.[6]

We agree with the District Court's assessment that *Wright* and *Johnson* are ultimately distinguishable. *See infra* Section II.B. But a judge's ability to discern boundaries between cases in the quietude of chambers does not necessarily translate to what "every reasonable official would [have understood]" in conducting an arrest or prosecution. *al-Kidd*, 563 U.S. at 741 (cleaned up). Rather, the relevant precedent "must have placed the . . . constitutional question beyond debate." *Id.* And though we attempted to clarify in *Johnson* that the "any-crime" rule was applicable to false arrests claims, but not malicious prosecution claims, it did not have that crystallizing effect.

Quite the opposite. In *Kossler*, we not only acknowledged the "considerable tension" between *Wright* and *Johnson*. 564 F.3d at 193. We also said that "the precedential status of *Wright* is not diminished," acknowledged its malicious prosecution analysis was "difficult to reconcile"

---

[6] Although this opinion concerns the District Court's denial of Det. Pierce's motion for judgment on the pleadings, we quote here from the District Court's memorandum opinion regarding Det. Pierce's motion to dismiss because it discussed *Wright* and *Johnson* in greater depth. *See* Mem. on Mot. for J. on the Pleadings at 20, *Rivera-Guadalupe v. City of Harrisburg*, No. 1:19-CV-1400 (M.D. Pa. Mar. 27, 2023), ECF No. 84 ("In its previous decision, the court recounted these cases in some depth and will not repeat its review here.").

with *Johnson*, and explained their tension not as illustrating the different rules applicable to false arrest and malicious prosecution, but as "illustrat[ing] that the analysis of malicious prosecution claims involving multiple charges is a fact-intensive one." *Id.* at 194. Yet even as we attempted to reconcile *Wright* and *Johnson* as involving different "fact-based inquir[ies]," *id.*, we also noted that "assuming arguendo that [they] are in unavoidable conflict," *Wright*, as the earlier of the two, "must control for purposes of analyzing the probable cause element," *id.* at 194 n.8.

Several years later, in *Dempsey v. Bucknell University*, 834 F.3d 457 (3d Cir. 2016), we tried again to detangle these cases, citing to *Johnson* and explaining that "although false arrest . . . claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee," it was still the case that "'probable cause on one charge does not foreclose a malicious prosecution cause of action' based on additional charges for which there was no probable cause." *Id.* at 477 (quoting *Johnson*, 477 F.3d at 83). But we did not explicitly distinguish *Barna* and *Wright* from *Johnson* or address our footnote in *Kossler*. Perhaps it is not surprising, therefore, that confusion persisted in various forums.

For one, the debate continued among the district courts in our circuit. *See, e.g.*, *DeLade v. Cargan*, No. 3:16-CV-00415, 2019 WL 1387704, at *15–16 (M.D. Pa. Mar. 27, 2019) (adopting Magistrate Judge's recommendation to grant summary judgment on malicious prosecution claim based on *Barna* and *Wright*'s holdings that probable cause need only exist as to one of several charged offenses); *Tate v. Hasara*, No. 14-4609, 2017 WL 5505015, at *8 n.12 (E.D. Pa. Nov. 16,

14

2017) (granting summary judgment on malicious prosecution claim in view of the "considerable tension" between *Wright* and *Johnson* and *Kossler*'s instruction "that to the extent the cases 'are in unavoidable conflict,' *Wright*, the earlier-decided case, would control" (quoting *Kossler*, 564 F.3d at 193–94 & n.8)); *Davis v. Graber*, No. 14-1416, 2017 WL 222298, at *1 & n.1 (W.D. Pa. Jan. 18, 2017) (concluding that because *Kossler* "acknowledged the preeminence of" *Wright*, the law was at least "murky" and "that murkiness [] stands at least for the proposition" that the rule of *Johnson* was not "clearly established").

It also manifested itself in some of our own non-precedential opinions.[7] *Compare, e.g.*, *Harvard v. Cesnalis*, 973 F.3d 190, 199 n.3 (3d Cir. 2020) ("probable cause on one charge 'does not foreclose a malicious prosecution cause of action' as to a separate charge which lacks probable cause" (quoting *Johnson*, 477 F.3d at 83)), *with Simonson v. Borough of Taylor*, 839 F. App'x 735, 740 n.7 (3d Cir. 2020) (explaining that probable cause on at least one charge defeats a malicious prosecution claim when the charges were brought simultaneously and arose from the same incident), *and Batiz v. Brown*, 676 F. App'x 138, 142–43 (3d Cir. 2017) (explaining that the *Johnson* rule applies only when "the additional charges for which there might not have been probable cause . . . resulted in additional restrictions on his liberty beyond those attributable to the prosecution on the . . . charges for which

---

[7] Our non-precedential opinions are referenced here only to provide additional evidence that confusion about the distinctions between *Wright* and *Johnson* persisted.

there was probable cause" (alterations in original) (citation omitted)).

In the meantime, other Courts of Appeals came to different conclusions, ultimately necessitating the Supreme Court's intervention in *Chiaverini*. Disagreement emerged even before the events at issue in this case. *Compare Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) (rejecting application of the any-crime rule to malicious prosecution cases), *with Grider v. City of Auburn*, 618 F.3d 1240, 1256–57 (11th Cir. 2010) (suggesting in dictum that the any-crime rule applies to malicious prosecution). In 2020, however, the Eleventh Circuit rejected its earlier dictum and held that the any-crime rule is inapplicable in the malicious prosecution context, *Williams v. Aguirre*, 965 F.3d 1147, 1159–62 (11th Cir. 2020), while the Sixth Circuit took the opposite course and held "there's no principled reason for treating a Fourth Amendment malicious-prosecution claim differently than a Fourth Amendment false-arrest claim," *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020).

Considering the combination of confusion within our own circuit and the other Courts of Appeals, we cannot say that the bounds of the any-crime rule were "beyond debate" when Det. Pierce arrested Rivera-Guadalupe in 2017. The Supreme Court has observed that "[i]f judges [themselves] disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Reichle v. Howards*, 566 U.S. 658, 669–70 (2012) (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)). And while not dispositive, "a split among the Federal Circuits"—even one that developed only "[b]etween the time of the events of this

16

case and [the Supreme Court's decision resolving it]"—provides additional evidence of ambiguity. *Layne*, 526 U.S. at 618; *see also Rivera v. Monko*, 37 F.4th 909, 922 (3d Cir. 2022) (observing that even "[a] two-court circuit split demonstrates that no 'robust consensus' exists"). Though *Chiaverini* has now made crystal clear that the any-crime rule does not pertain to malicious prosecution claims, that ambiguity existed in the timeframe relevant here.

Because the right that Rivera-Guadalupe seeks to vindicate in his malicious prosecution suit was not clearly established at the relevant time, the District Court erred in denying Det. Pierce qualified immunity.

B.     The Any-Crime Rule Still Applies to False Arrest Claims

To end what has proven to be a years-long muddle and for the avoidance of doubt in the wake of *Chiaverini*, we take this opportunity to clarify that the any-crime rule of *Wright* governs claims for false arrest, whereas *Johnson*—and now *Chiaverini*— states the rule for malicious-prosecution claims.

Although both claims arise out of the Fourth Amendment's guarantee against unreasonable seizures, the seizures they concern are different in substance and duration. As the Supreme Court has explained, claims for false arrest challenge "detention without legal process," *Wallace v. Kato*, 549 U.S. 384, 389 (2007), while malicious prosecution involves seizure "pursuant to legal process," *Thompson v. Clark*, 596 U.S. 36, 42 (2022); *see also Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("[U]nlike the related cause of action for false arrest or imprisonment, [malicious prosecution] permits

damages for confinement imposed pursuant to legal process."). And a person arrested may be constitutionally detained without a warrant only for a short period before she must be presented to a neutral magistrate for a determination of probable cause, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), whereas a person held pursuant to legal process may be subjected to far longer detention, and each charge she faces "almost surely will place an additional burden on the defendant," *Johnson*, 477 F3.d at 84.

In recognition of these distinct burdens, the majority of our sister circuits to address the question held—even before *Chiaverini*—that the any-crime rule applies only to false arrest, and not malicious prosecution claims. *See, e.g.*, *Aguirre*, 965 F.3d at 1159–62; *Doherty*, 944 F.2d at 100; *see also Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682–83 (7th Cir. 2007) (adopting the same rule in the context of a state-law malicious-prosecution claim). Though there were some outliers that perceived "no principled reason for treating a Fourth Amendment malicious-prosecution claim differently than a Fourth Amendment false-arrest claim," *Hodous*, 953 F.3d at 409, *Chiaverini* has now put the debate to rest, once and for all, 602 U.S. at 561.

## III.   Conclusion

For the foregoing reasons, we will reverse the District Court's denial of qualified immunity and remand for proceedings consistent with this opinion.

18