PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 23-2963

———————————

HENRY UNSELD WASHINGTON

v.

ROBERT GILMORE, Warden; TRACY SHAWLEY, Warden's Assistant; S.P. DURCO, RHU Commander; P.E. BARKEFELT, RHU Lieutenant; A.J. MORRIS, Lieutenant; C. WILLIAMS, Lieutenant; G. CRABLE, Sergeant; J.M. SMITH, Sergeant; ROBERT NELSON, Corrections Officer; T.S. OSWALD, Corrections Officer; L. COMER, Corrections Officer; T.I. BENNETT, Property Officer/Corrections Officer; R. HENDRICKS, Corrections Officer; J. CODDY, Corrections Officer; J. HEGETER, Corrections Officer; D. FARRIER, Corrections Officer; M. STUMP, Corrections Officer; G. TAIT; J.D. SUHAN, Corrections Officer; IRMA VIHLIDAL, Health Care Administrator; B. JIN, Medical Director; M. PARK, Doctor; P. DASCANI, Doctor; M. COMER, P.A.; E. MATTES, P.A.; E. MWUARA, P.A.; P. DENNISON, Corrections Officer

T.S. OSWALD,
                                    Appellant

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:15-cv-01031)
District Judge: Honorable Cathy Bissoon
_____

Argued: September 24, 2024

Before: KRAUSE, BIBAS, and AMBRO, *Circuit Judges*
(Filed: December 18, 2024)

Sean A. Kirkpatrick
PENNSYLVANIA ATTORNEY GENERAL'S OFFICE
Strawberry Square 15th Floor
Harrisburg, PA 17120

Anthony T. Kovalchick                    **[ARGUED]**
PENNSYLVANIA ATTORNEY GENERAL'S OFFICE
APPELLATE LITIGATION SECTION
1251 Waterfront Place
Pittsburgh, PA 15222
        *Counsel for Appellant*

Samuel Weiss                             **[ARGUED]**
Amaris A. Montes
RIGHTS BEHIND BARS
1800 M Street NW
Front 1 #33821
Washington, DC 20003
        *Counsel for Appellee*

2

_____

OPINION OF THE COURT

_____

BIBAS, *Circuit Judge*.

Juries have leeway to punish and deter wrongdoers with punitive damages. Prison guard T.S. Oswald sexually abused a prisoner twice. So the jury ordered him to pay not only $20,000 in compensation for each assault, but also $25,000 in punitive damages for the first one and $200,000 for the second.

We will affirm the jury's award. Oswald denies that there was enough evidence that he committed the assault, but there was. He also challenges the punitive damages as excessive. But the assaults were blameworthy, the awards are in the range of comparable cases, and even the 10-to-1 ratio of punitive-to-compensatory damages is fitting.

## I. OFFICER OSWALD SEXUALLY ASSAULTED WASHINGTON TWICE

On this appeal from a jury verdict, we view the facts in the light most favorable to the prevailing party: state prisoner Henry Washington. *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 379 (3d Cir. 2004).

In 2013, Oswald and another guard came to move Washington from his cell to the prison's visiting room. They handcuffed Washington and hooked a tether to his cuffs. A guard "started to rub and touch [him] in a very sexual manner." App. 109. They kept trying to push a nightstick into his rectum.

3

When he tried to move away, they jerked the tether or poked him with a pin or needle.

At the visiting room, "someone … insert[ed] their finger into the cleavage of [his] buttocks." App. 110. Washington jumped. Oswald yanked on his tether so hard that it pulled his arms "through the wicket" in the door to the visiting room. *Id.* The other guard prodded his testicles with the nightstick "so vigorously" that Washington collapsed "to the floor." App. 110–11.

On the walk back to Washington's cell, the guards again prodded him with the nightstick, poked him with the pin or needle, and called him "honey," "sugar," and "blackberry." App. 111. By the time he got back to his cell, "blood [was] running down the back of [his] leg" and his "crotch was all soaked with blood." App. 112. He was "bleeding from [his] buttocks … [a]nd … penis." App. 138.

Two years later, Oswald assaulted Washington again. While walking Washington back to his cell in handcuffs, Oswald fondled him all over his back and "rump," "shove[d] his finger into [Washington's] buttocks" like he was "trying to insert his finger into [Washington's] rectum," and again called him "sweet dark sugar" and "blackberry." App. 113–14.

Washington sued Oswald under 42 U.S.C. §1983 for inflicting cruel and unusual punishment. U.S. Const. amend. VIII. The jury found for Washington. For the 2013 assault, it awarded him $20,000 in compensatory damages plus $25,000 in punitive damages; for the 2015 assault, $20,000 plus $200,000.

4

After the verdict, Oswald moved for judgment as a matter of law or a new trial, claiming that there was insufficient evidence that *he* was the one who had assaulted Washington. He also moved for remittitur, asking the District Court to reduce the punitive damages as excessive under the Constitution, state law, and federal common law. The court denied all these motions.

Oswald now appeals. We review the District Court's denial of judgment as a matter of law de novo and its denial of a new trial for abuse of discretion. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166–67 (3d Cir. 1993). We ordinarily review the District Court's denial of a motion for remittitur for abuse of discretion. *Jester v. Hutt*, 937 F.3d 233, 238 (3d Cir. 2019). But where, like here, we review a district court's "decision upholding the constitutionality" of a punitive damages award, our review is de novo. *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 230 (3d Cir. 2005) (citing *Cooper Indus. v. Leatherman Tool Grp.*, 532 U.S. 424, 431 (2001)).

## II. THERE WAS ENOUGH EVIDENCE TO FIND OSWALD LIABLE

Oswald does not deny that Washington was assaulted by someone but, as noted, disputes that there was enough evidence that he was the one who did it. In essence, he argues that Washington had to identify him by name but did not. If "a reasonable jury would not have a legally sufficient evidentiary basis" to find Oswald responsible, the District Court may grant judgment as a matter of law. Fed. R. Civ. P. 50(a)(1). Oswald preserved this argument by moving for judgment as a matter of law at the close of Washington's case and again after the jury's verdict. Fed. R. Civ. P. 50(a)–(b).

5

But Oswald's claim fails. Judgment as a matter of law is proper only if the record is "critically deficient of the minimum quantum of evidence" needed to support the verdict. *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995). It is not. Drawing "all reasonable and logical inferences" in Washington's favor, the jury had enough evidence to find that Oswald was one of the assailants. *Lightning Lube*, 4 F.3d at 1166.

Start with the 2013 assault. Washington specifically named Oswald as one of the two guards involved; the other was an unnamed sergeant. After one of them fondled Washington's back and rear end and stuck his finger into Washington's buttocks, it was Oswald who yanked on the tether to restrain Washington. Oswald did that as part of a course of conduct in which the guards rubbed and touched Washington sexually, then kept prodding Washington's rear end and testicles with a nightstick, poking him with something sharp until he had blood down his leg and all over his crotch, and calling him sexual terms. This is sufficient evidence for a jury to find that, at a minimum, Oswald was personally involved in the constitutional violation. Though Oswald denied all this, he confirmed that he was "probably" working in Washington's cell block that day (August 1, 2013) and "[m]ost likely" escorted him to the visiting room. App. 158–59. The jury could reasonably have believed Washington's version of events over Oswald's and found that Oswald had sexually assaulted him in 2013.

So too with the 2015 assault. Washington testified that a guard who "was in the first event" and had since "bec[o]me a sergeant" assaulted him again. App. 113. He had said that the first assault was by Oswald and "a sergeant." App. 110. The

only guard who could have assaulted him the first time and later been promoted to sergeant was Oswald. Plus, Oswald testified that he had "[p]robably" become a sergeant by then (April 2, 2015) and was "probably" working that day. App. 180. And he admitted that he regularly escorted prisoners to showers during that time. That was enough evidence for a jury to find that he was the assailant in 2015. In short, the District Court properly denied Oswald's motion for judgment as a matter of law or for a new trial.

### III. THE JURY'S PUNITIVE-DAMAGES AWARDS WERE NOT EXCESSIVE

Next, Oswald challenges the punitive-damages awards as excessive under both federal common law and the Due Process Clause of the Fifth Amendment. But the District Court properly rejected both claims.

#### A. *Exxon* does not limit punitive damages under §1983

Oswald argues that federal common law limits punitive damages in §1983 suits. And he contends that the Supreme Court's decision in a maritime-tort case creates a federal-common-law limit that applies here. *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008). That claim misses the mark.

True, "Congress intended §1983 to be construed in the light of common-law principles." *Rehberg v. Paulk*, 566 U.S. 356, 361–62 (2012) (cleaned up). And because §1983 provides a cause of action for constitutional torts but says nothing about damages, the Supreme Court has "looked first to the common law of torts" to decide when damages, including punitive ones,

7

are available in § 1983 actions. *Smith v. Wade*, 461 U.S. 30, 34 (1983).

But *Exxon* does not provide any common-law principles that govern here. That case arose in federal maritime jurisdiction, where the Court decides issues "in the manner of a common law court." 554 U.S. at 489–90. In making common law, the Court held that "punitive damages in maritime law" should not exceed compensatory damages. *Id.* at 489, 513. But we are under a statute, not at sea. On dry land, that maritime rule does not bind us.

If there is any nonconstitutional limit on punitive damages under § 1983, it might come from the settled common-law rules that the statute incorporated. *See Kunz v. DeFelice*, 538 F.3d 667, 678–79 (7th Cir. 2008); *Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 956 (7th Cir. 2018). Here, though, Oswald based his nonconstitutional claim on *Exxon* and federal common law, not the meaning of § 1983. Because the parties neither preserved that distinct claim nor briefed how best to construe § 1983, we leave it to future courts to decide what common-law limits, if any, the statute incorporated.

Ultimately, courts "must respect the limitations Congress built into the statute." *Kunz*, 538 F.3d at 678. Cases evaluating punitive damages under the common law that governed when § 1983 was enacted might shed light on those limits. *See, e.g.*, *Belknap v. Bos. & M.R.R.*, 49 N.H. 358, 371 (1870) (noting that courts lowered punitive damages if their size suggested that juries had imposed them out of "passion, prejudice, or ignorance" (quoting Theodore Sedgwick et al., *A Treatise on the Measure of Damages* 707 (5th ed. 1869))); *Zimmerman v.*

8

*Bonzar*, 16 A. 71, 71–72 (Pa. 1888) (evaluating 2-to-1 ratio); *Parks v. Young*, 12 S.W. 986, 987–88 (Tex. 1889) (0.7 to 1); *P.J. Willis & Bro. v. McNeill*, 57 Tex. 465, 480 (1882) (12 to 1); *Saunders v. Mullen*, 24 N.W. 529, 529 (Iowa 1885) (13 to 1). But we leave it to future courts to decide this question when the issue is properly before them.

### B. The punitive-damages awards were not constitutionally excessive

Oswald's constitutional challenge is a closer issue. The Supreme Court has held that the Due Process Clause limits punitive damages. To decide whether they are excessive, we look to three "guideposts": how *reprehensible* (blameworthy) the defendant was, the *disparity* (ratio) between the award and the harm the plaintiff suffered or could have suffered, and how the award stacks up against "civil penalties authorized or imposed in *comparable cases*." *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 418 (2003) (emphasis added). Each factor favors upholding both of the jury's punitive-damages awards.

*1. Reprehensibility*. The "most important" factor is the defendant's blameworthiness. *Id.* at 419. To measure it, *State Farm* tells us to consider five subfactors. *Id.* All five support the awards here.

- Oswald physically injured Washington. *Id.*

- He did it on purpose. *Id.*

- Though Oswald injured only one victim, he did it repeatedly. *Id.*

- He did it not for a legitimate reason, but "maliciously and sadistically for the very purpose of causing harm." *Ricks*

9

*v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

- And Oswald targeted one of the most vulnerable among us: a prisoner. Sexually assaulting a prisoner "offends our most basic principles of just punishment." *Id.* at 473 (internal quotation marks omitted). Prisoners are "stripped … of virtually every means of self-protection" and cannot get outside help; they depend on their guards to safeguard them. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Instead of safeguarding Washington, Oswald exploited his power to prey upon him. Those acts were reprehensible in every sense of the word.

*2. Ratio of punitive damages to harm.* Though the punitive damages were up to ten times as big as the compensatory ones, that ratio is permissible here. The Supreme Court has refused to cap punitive damages with a "bright-line ratio." *State Farm*, 538 U.S. at 425. It did warn us that "few awards [should] exceed[ ] a single-digit ratio … to a significant degree." *Id.* But some factors can justify higher ratios: when, for instance, economic damages are low or noneconomic damages are hard to measure. *Id.* The touchstone is whether the awards are "reasonable and proportionate" to the defendant's wrongdoing and the plaintiff's specific harm. *Id.* at 425–26.

The parties dispute whether we should calculate the ratio separately for each assault or combine the two. Washington argues that we should aggregate them because the jury awarded them for related wrongs. Some of our sister circuits have conceptualized the issue this way. *Bains LLC v. Arco Prods. Co., Div. of Atl. Richfield Co.*, 405 F.3d 764, 776 (9th

10

Cir. 2005); *see also Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1089 (7th Cir. 2019). But that approach to aggregating does not apply here, where the jury was instructed to treat each assault discretely and did so. Aggregating the awards would distort the jury's findings. When a jury doles out separate awards for separate counts, courts must consider whether each award was constitutional. That means calculating the ratios separately.

Even considered separately, both ratios pass constitutional muster. The first was 1.25 to 1 ($25,000 punitive to $20,000 compensatory); the second, 10 to 1 ($200,000 to $20,000). True, the latter ratio exceeds single digits—but by only a penny, not "a significant degree." *State Farm*, 538 U.S. at 425. And because the single-digit ratio is only a rule of thumb, not a cap, it just alerts us to look for a "special justification." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 192 (3d Cir. 2007) (internal quotation marks omitted). We have that here. Sexual assault inflicts the kind of non-economic harm that is hard to put a price on, justifying a higher ratio. *State Farm*, 538 U.S. at 425.

Plus, the rationales for punitive damages are to punish wrongdoing and deter it. *Id.* at 416. Oswald repeated his sadistic assault, making him more blameworthy and compounding Washington's earlier suffering. Just as the criminal law punishes recidivists more harshly for failing to learn their lessons and choosing to flout the law again, so too does the civil law. The jury reasonably found the second assault worse than the first and raised its punitive-damages award accordingly.

11

What is more, potential harm matters too. We must compare punitive damages with not only actual harm, but also "possible harm to other victims that might have resulted if similar future behavior were not deterred." *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 460 (1993) (plurality). Oswald willingly repeated his egregious behavior. If we fail to deter him, others could suffer as well. That all favors finding the award not "grossly out of proportion to the severity of the offense." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996) (internal quotation marks omitted).

*3. Comparable cases.* Under *State Farm*'s third guidepost, we look at what "civil penalties [are] authorized or imposed in comparable cases." 538 U.S. at 418. Section 1983 does not list civil penalties. Outside the § 1983 context, we have declined to consider this third factor where we lack statutory penalties. *See, e.g.*, *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 363 (3d Cir. 2015). But some of our sister circuits do consider this third factor in § 1983 cases. They compare the punitive-damages awards at issue to those approved by courts in factually similar § 1983 actions. *See, e.g.*, *Osterhout v. Bd. of Cnty. Comm'rs*, 10 F.4th 978, 1003 (10th Cir. 2021); *Kidis v. Reid*, 976 F.3d 708, 717 (6th Cir. 2020); *Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 55 (1st Cir. 2009). We need not decide whether to adopt that approach here because the other two factors already support the awards' constitutionality. *Cf. Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 468 (3d Cir. 1999).

If we looked at these comparators, they would at most help us gauge whether an award is so "grossly excessive" that it falls within "the zone of arbitrariness that violates the Due Process

Clause." *BMW*, 517 U.S. at 568. They would not be a strait-jacket or outer limit. And the awards here would fall within the ballpark that courts have deemed reasonable in similar § 1983 actions. *See, e.g*, *Doe v. Green*, No. 17-cv-1765, 2021 WL 2188534, at *2, *9 (S.D.N.Y. Apr. 29, 2021), *report and recommendation adopted*, No. 17-cv-1765, 2021 WL 2188148 (S.D.N.Y. May 28, 2021) (imposing $200,000 in punitive damages on a prison guard who forcibly kissed an inmate and fondled her genitals); *Amador v. Galbreath*, No. 10-cv-6702L, 2013 WL 1755784, at *1, *3 (W.D.N.Y. Apr. 24, 2013) (imposing $250,000 in punitive damages on a prison guard who forced a female prisoner to perform oral sex on him).

Whether we consider only the first two factors or all three, both punitive-damages awards are constitutional. The District Court properly upheld them.

\* \* \* \* \*

The jury had enough evidence to find that it was Oswald who sexually abused Washington twice. And its two punitive-damages awards were proportional to "the enormity of his offense[s]" and the harms that they inflicted on Washington. *BMW*, 517 U.S. at 575 (internal quotation marks omitted). While the second award may be close to the line, it does not exceed it, so we will affirm.