# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

Nos. 24-2320, 24-2368, and 24-2557

TZVIA WEXLER

v.

CHARMAINE HAWKINS; JAMES KOENIG

> Tzvia Wexler,
>   Appellant in No. 24-2368
> Charmaine Hawkins;
> James Koenig,
>   Appellants in Nos.
>   24-2320, 24-2557

_____

Appeal from the U.S. District Court, E.D. Pa.
Judge Cynthia M. Rufe, No. 2:19-cv-05760

Before: BIBAS, PORTER, and BOVE, *Circuit Judges*
Argued Jan. 28, 2026; Decided Apr. 22, 2026
_____

OPINION OF THE COURT

BOVE, *Circuit Judge*.  An officer from the Philadelphia Police Department, Defendant Charmaine Hawkins, used a choke hold on Plaintiff Tzvia Wexler in 2019.  Both women suffered minor injuries during the exchange.  When Plaintiff asked for medical treatment and the officer's identifying information, Defendant Hawkins retaliated by pursuing

escalated charges. Based on Defendant Hawkins' account of the incident, Detective James Koenig—the second Defendant here—recommended that Plaintiff be charged with five crimes, including an aggravated-assault felony. Plaintiff was detained overnight. She was released early the next morning. The charges were later dismissed.

Plaintiff sued under § 1983 and Pennsylvania law. She won a trial against Defendants Hawkins and Koenig. The jury awarded her $6,000 in compensatory damages, with $4,000 apportioned to Defendant Hawkins, and $1 million in punitive damages, which the jury split evenly between the two Defendants. In response to Defendants' post-trial motions, the District Court reduced the punitive damages by half.

On appeal, Defendant Koenig argues that he was entitled to judgment as a matter of law because the charges he recommended against Plaintiff were supported by probable cause. We agree. Defendant Hawkins does not challenge the jury's findings regarding liability or compensatory damages. But she and Plaintiff cross-appeal the remaining $250,000 of punitive damages. Removed from the emotionally charged trial environment, and applying the due-process "guideposts" established by the Supreme Court, we find the punitive-damages award to be constitutionally excessive. Plaintiff made a modest showing on the reprehensibility guidepost, but the extreme disparity between the punitive and compensatory damages lacks legal and factual support. Using our best judgment, which is all we can do when required to apply this amorphous constitutional test, the punitive damages are reduced to $12,000.

We will therefore reverse the judgment against Defendant Koenig, vacate the judgment against Defendant

Hawkins, and remand for further proceedings consistent with this opinion.

## I.

The trial lasted five days and included testimony from the parties, Plaintiff's husband, and another officer who was present at the scene with Defendant Hawkins. In summarizing the trial evidence below, we draw all inferences in favor of Plaintiff.

## A.

On June 9, 2019, Plaintiff planned to ride her bike to a meeting near Rittenhouse Square in Philadelphia. Defendant Hawkins was assigned to crowd control duties on a parade route between Plaintiff and her meeting. Plaintiff started to walk her bike as she approached the crowd from the parade. An officer directed her to cross the route down the street. Plaintiff then encountered Defendant Hawkins.

Defendant Hawkins told Plaintiff that she could not continue in the same direction on the street. Plaintiff testified at trial that Defendant Hawkins followed up on verbal instructions by pulling Plaintiff's bike and shoving Plaintiff into the crowd. Plaintiff told the jury that, after Defendant Hawkins "shoved" her a second time, Defendant Hawkins "grabbed" Plaintiff's neck and "choked" her with both hands. JA262-63. Another officer testified at the trial that Defendant Hawkins had at least one hand near Plaintiff's neck in a "grasping motion," and that Plaintiff and Defendant Hawkins "were both grabbing each other high in their neck area." JA852, 857.

3

Following the scuffle, Plaintiff asked for Defendant Hawkins' name and badge number and to be taken to the hospital. Body camera footage captured Defendant Hawkins indicating that the police had planned to provide Plaintiff with a form of ticket known as a Code Violation Notice for disorderly conduct, but they decided to increase the charges based on Plaintiff's questions and scratches sustained by Defendant Hawkins. Officers told Plaintiff that she was "not going to the hospital." JA213. The officer who prepared the Code Violation Notice gave it to Defendant Hawkins, who testified that she did not recall receiving it.

Defendant Hawkins and other officers arrested Plaintiff, handcuffed her, and lodged her at a detention facility at approximately 5:00 p.m. on June 9, 2019. While Plaintiff was detained, Defendant Koenig interviewed Defendant Hawkins regarding the incident. Defendant Hawkins said that Plaintiff had shoved her, grabbed her by the shirt, and scratched her neck and face. Defendant Hawkins did not tell Defendant Koenig that she had put her hands on Plaintiff's neck.

Following the interview, Defendant Koenig briefed his immediate supervisor and recommended charges against Plaintiff. The supervisor did not ask Defendant Koenig for additional information or direct follow-up investigation. She approved Defendant Koenig's recommendation that Plaintiff be charged with aggravated assault and four other crimes.

Plaintiff was released from custody early on the morning of June 10, 2019. On July 22, 2019, Plaintiff attended a preliminary hearing where Defendant Hawkins testified about her side of the story from June 9. At the hearing, Defendant Hawkins maintained that she had only "grabbed" Plaintiff's neck with one hand. JA637-38. Based on that

4

testimony, a judge authorized the District Attorney to proceed on the aggravated assault and simple assault charges. In response to a motion by Plaintiff challenging those charges, the District Attorney withdrew them.

**B.**

On December 6, 2019, Plaintiff filed federal and state claims against the City of Philadelphia, Philadelphia's Police Department, Defendant Hawkins, Defendant Koenig, and another officer. Defendants Hawkins and Koenig were the only defendants remaining in the case when the trial started on January 16, 2024. At that point, the live claims were:

- Excessive force against Defendant Hawkins, in violation of 42 U.S.C. § 1983;

- Assault and battery against Defendant Hawkins, in violation of Pennsylvania law;

- First Amendment retaliation against Defendant Hawkins, in violation of 42 U.S.C. § 1983;

- False imprisonment against Defendants Hawkins and Koenig, in violation of 42 U.S.C. § 1983 and Pennsylvania law;

- False arrest against Defendants Hawkins and Koenig, in violation of 42 U.S.C. § 1983 and Pennsylvania law; and

- Malicious prosecution against Defendants Hawkins and Koenig, in violation of 42 U.S.C. § 1983 and Pennsylvania law.

On January 23, 2024, the jurors found for Plaintiff on each claim. They apportioned $4,000 in compensatory damages to Defendant Hawkins and $2,000 in compensatory damages to Defendant Koenig. The jury also found that both Defendants acted wantonly or maliciously and awarded $1 million in punitive damages, with $500,000 apportioned to each Defendant.

On June 21, 2024, the District Court denied substantially all of Defendants' post-trial motions. The sole exception was that the District Court reduced the punitive-damages awards to $250,000 against each Defendant. On July 25, 2024, the District Court awarded Plaintiff $292,810.23 in attorneys' fees. The parties timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291.

In Part III, we conduct de novo review of the District Court's denial of Defendant Koenig's motion for judgment as a matter of law. *See Rodriquez v. Se. Pa. Transp. Auth.*, 119 F.4th 296, 298 (3d Cir. 2024).[1] In Part IV, we conduct de novo review of the District Court's application of constitutional

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, alterations, and subsequent history.

criteria governing punitive damages. *See Washington v. Gilmore*, 124 F.4th 178, 184 (3d Cir. 2024).

**III.**

We take a "fresh look" at the District Court's denial of Defendant Koenig's motion for judgment as a matter of law on Plaintiff's false imprisonment, false arrest, and malicious prosecution claims. *Rodriquez*, 119 F.4th at 298; *see also* Fed. R. Civ. P. 50. Our examination of the record reveals that the relevant decisions by Defendant Koenig were supported by probable cause. Thus, his motion should have prevailed.

**A.**

One element common to Plaintiff's claims for false arrest and false imprisonment was that Defendant Koenig lacked probable cause to believe that Plaintiff committed a crime when he recommended that charges be filed against her. *See Lozano v. New Jersey*, 9 F.4th 239, 245-46 (3d Cir. 2021); *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). Plaintiff was required to establish that there was no probable cause for any crime at all, which we call the "any-crime rule." *Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024). In light of the information available to Defendant Koenig at the time he recommended the charges, no reasonable juror could conclude that Plaintiff met her burden on that element.

The top charge that Defendant Koenig recommended was aggravated assault. *See* 18 Pa. Stat. and Cons. Stat. Ann. § 2702(a). Pennsylvania law establishes multiple forms of that offense. One of them required proof that Plaintiff "attempt[ed] to cause or intentionally or knowingly cause[d] bodily injury"

7

to Defendant Hawkins. *Id.* § 2702(a)(3). "Bodily injury" is an "[i]mpairment of physical condition or substantial pain." *Id.* § 2301. The definition requires more than "fast dancing," but the probable cause threshold is crossed where an officer is struck in the face and experiences "slight swelling and pain." *Commonwealth v. Marti*, 779 A.2d 1177, 1181 (Pa. Super. Ct. 2001). Similar to federal law, attempt in Pennsylvania requires specific intent and a substantial step. *See Commonwealth v. Martuscelli*, 54 A.3d 940, 947-48 (Pa. Super. Ct. 2012).

With the aggravated-assault charge in mind, we evaluate probable cause based on what was "known to" Defendant Koenig. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). The relevant frame of reference is "the moment" Defendant Koenig recommended the charges. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "[T]he standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005).

The following evidence was presented to the jury. On the afternoon of June 9, 2019, Defendant Hawkins told Defendant Koenig that Plaintiff had been "irate," used a bike to "hit" her, scratched her face and arm, and "grabbed" her near the neck. JA454-55. Defendant Hawkins described "throbbing" pain in her neck and arm following the affray. JA454-55. She also gave Defendant Koenig two reports with additional details. The first report, titled "Injured Officer," stated that Plaintiff "shoved her bike into" Defendant Hawkins and "grabbed the Officer by the Shirt," which caused "scratches" on Defendant Hawkins' neck and face. JA453-55. The second report, titled "Assault on Police," stated that Plaintiff "shoved" her bike at Defendant Hawkins and

8

"grab[bed]" for Defendant Hawkins' face. JA454-55. The second report also stated that the incident caused "scratches" to Defendant Hawkins' face and arm. JA454-55.

Following the interview, Defendant Koenig had probable cause to believe Plaintiff attempted to cause bodily injury to Defendant Hawkins and therefore committed aggravated assault under Pennsylvania law. While the trial revealed that there was more to the story, a probable-cause finding was the only conclusion available to Defendant Koenig that afternoon based on evidence suggesting that an angry civilian had refused to follow lawful commands, struck an officer with a bike multiple times, and attacked the officer's neck, face, and arms. Intent and a substantial step toward that objective were sufficiently demonstrated by the injuries that Defendant Hawkins sustained, which Defendant Koenig documented at the time of the interview and included markings near Defendant Hawkins' neck and a scratch within inches of her eye. *See Commonwealth v. Patrick*, 933 A.2d 1043, 1047 (Pa. Super. Ct. 2007) ("[T]here can be no dispute about the physiological significance of the victim's head."). Based on that evidence, no reasonable juror could find that Plaintiff met her burden of establishing a lack of probable cause in support of the false arrest and false imprisonment claims against Defendant Koenig.

Plaintiff's arguments to the contrary attack what she regards as a "slipshod" investigation. Answering Br. 25. In particular, Plaintiff points to trial evidence of Defendant Koenig's apparent failure to follow Department procedures relating to investigations of officer assaults. The District Court reasoned similarly when denying Defendant Koenig's motion for judgment as a matter of law. Generally, however, post-hoc claims about investigative deficiencies do not undermine

9

probable cause. *See Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001); *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 & n.8 (3d Cir. 2000); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 n.10 (3d Cir. 1995); *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). On these facts, that proposition controls. The District Court's view that Defendant Koenig's investigation was not "thorough" enough was not relevant to the probable-cause element of Plaintiff's claims. JA27.

Because we will not autopsy the quality of the Department's investigation in this posture, we reject Plaintiff's push for a "totality-of-the-circumstances inquiry" that incorporates supposedly "exculpatory evidence." Answering Br. 31. The case Plaintiff cites in support of this argument, *Harvard v. Cesnalis*, does not call for that sort of free-ranging analysis. *See* 973 F.3d 190, 203 (3d Cir. 2020). *Harvard* requires an officer to consider "plainly exculpatory evidence" that is known to him at the time he assesses probable cause. *Id.* at 200. The holding is limited to instances of "*obvious* exculpatory evidence that casts a dark cloud on the reliability of other evidence suggesting guilt." *Madero v. McGuinness*, 97 F.4th 516, 523 n.9 (7th Cir. 2024). No such evidence was presented to Defendant Koenig on the afternoon of June 9, 2019.

Plaintiff argues that Defendant Koenig should have found Defendant Hawkins' account "questionable" and then interviewed Plaintiff, among other things. Answering Br. 32-33. Nothing in *Harvard* required those steps. Even if Defendant Koenig had elected to interview Plaintiff prior to making his decision, he would not have been required to accept her version of events. *See Wright*, 409 F.3d at 603; *Paff v. Kaltenbach*, 204 F.3d 425, 437 (3d Cir. 2000); *see also District*

10

*of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts."). Therefore, Defendant Koenig is entitled to judgment as a matter of law on Plaintiff's claims for false arrest and false imprisonment.

**B.**

Plaintiff's federal malicious prosecution claim required proof that at least one of the charges recommended by Defendant Koenig was not supported by probable cause. The any-crime rule does not apply to that claim. *See Rivera-Guadalupe*, 124 F.4th at 303-04 (citing *Chiaverini v. City of Napoleon*, 602 U.S. 556, 564 (2024)). Pennsylvania courts do not appear to have addressed the implications of *Chiaverini* for purposes of the analogous state-law tort. *See, e.g.*, *York v. Kanan*, 298 A.3d 533, 546-47 (Pa. Commw. Ct. 2023). We need not express a view on that question because, regardless of whether the any-crime rule applies, Plaintiff failed to meet her burden on the malicious prosecution theory. She did not show that any of the charges were unsupported by probable cause.

In addition to aggravated assault, Defendant Koenig recommended four additional charges against Plaintiff: simple assault, recklessly endangering another person, harassment, and possessing an instrument of crime. On appeal, Plaintiff makes no distinct evidentiary arguments specific to these offenses. The first three crimes are co-located in the "Assault" chapter of Pennsylvania law with the aggravated-assault charge we analyzed above. *See* 18 Pa. Stat. and Cons. Stat. Ann. §§ 2701(a) (simple assault), 2705 (reckless endangerment), 2709 (harassment). In light of the elements of these offenses, it necessarily follows from our conclusions regarding the aggravated-assault charge that Defendant

11

Koenig's recommendation of three additional charges from the same chapter of Pennsylvania's statutes were supported by probable cause.

The fourth charge recommended by Defendant Koenig, possessing an instrument of crime, prohibits possession of "[a]nything used for criminal purposes," "under circumstances not manifestly appropriate for lawful uses it may have," while harboring intent to use the object criminally. 18 Pa. Stat. and Cons. Stat. Ann. § 907(a), (d)(2); *see also Commonwealth v. Moore*, 103 A.3d 1240, 1243 n.5 (Pa. 2014). Despite the fact that a bike is not a traditional criminal implement, Defendant Hawkins' account gave rise to probable cause for the charge. *See Commonwealth v. Brunson*, 938 A.2d 1057, 1062 (Pa. Super. Ct. 2007) (affirming § 907 conviction based on thrown soda bottle "made of harmless plastic"). According to Defendant Hawkins, Plaintiff had struck her with the bike. That could qualify as assault under Pennsylvania law, which was not a manifestly appropriate use of Plaintiff's two-wheeler. *See* 18 Pa. Stat. and Cons. Stat. Ann. § 2701(a). And because there was probable cause to believe that Plaintiff had acted with the intent necessary for the aggravated-assault charge, the intent element of this offense was also supported by probable cause.

We conclude that Plaintiff failed to establish at trial that Defendant Koenig lacked probable cause to support the charges he recommended against Plaintiff. Accordingly, as with the false arrest and false imprisonment theories, Defendant Koenig is entitled to judgment as a matter of law on Plaintiff's malicious prosecution claims.

**IV.**

Because Plaintiff did not establish Defendant Koenig's liability, we only need to address the award of $250,000 in punitive damages apportioned to Defendant Hawkins. Plaintiff asks us to reinstate the jury's original award of $500,000. Defendant Hawkins asks us to reduce the $250,000 award even further. She has the better argument.

"The Supreme Court has held that the Due Process Clause limits punitive damages." *Washington*, 124 F.4th at 186. The guiding principle is that defendants are entitled to fair notice of the severity of potential penalties for their misconduct. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). But "the relevant constitutional line is inherently imprecise." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 434 (2001). To assist, the Supreme Court has prescribed three due-process guideposts: the reprehensibility of the conduct, the disparity between the actual or potential harm and the punitive damages award, and comparison to any existing statutory penalties for comparable conduct. *See id.* at 435.

Notwithstanding the fuzziness of the standard, our de novo review of the constitutional question is "[e]xacting." *State Farm*, 538 U.S. at 418. This "ensures that an award of punitive damages is based upon an application of law, rather than a decisionmaker's caprice." *Id.* Constitutional limitations on punitive-damages awards are "an especially appropriate context in which the reflective role of a court of appeals follows the often dramatic arena of a trial court." *Mathie v. Fries*, 121 F.3d 808, 817 (2d Cir. 1997); *see also Cooper Indus.*, 532 U.S. at 440 (discussing "[d]ifferences in the institutional competence of trial judges and appellate judges").

The trial in this case was dramatic indeed. Plaintiff's counsel sought to persuade the jury with heated and at times questionable rhetoric. During his summation, he discussed slavery, the women's suffrage movement, and the death of George Floyd. Counsel improperly added himself to the jury when he told the jurors that "we"—including himself—are "the governed." JA1079. He used "we" again when asking the jurors to "send a message": "We're the governed and we will not stand for this from our government." JA1139; *see also Edwards v. City of Philadelphia*, 860 F.2d 568, 574 (3d Cir. 1988) (explaining that it is improper to "encourage[] the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence"). With a quote from Shakespeare's *Julius Caesar* and the non-sequitur comment that, "[i]ncreasingly, the citizens in our Nation have come to realize that they need not bend to the will of any police officer for any improper reason," the District Court's post-trial analysis of the punitive damages was not exactly dispassionate either. JA61; *see also State Farm*, 538 U.S. at 420 (criticizing use of individual case "as a platform to expose, and punish, the perceived deficiencies of State Farm's operations throughout the country").

Removed from the drama, we conclude that $250,000 in punitive damages is constitutionally excessive. The punitives awarded to Plaintiff are "neither reasonable nor proportionate to the wrong committed." *State Farm*, 538 U.S. at 429. Driving this conclusion is the fact that the reprehensibility of Defendant Hawkins' conduct is clear enough but not overwhelming, and the disparity between the punitive and compensatory damages is far too great. Our best judgment based on the trial record is that the constitutional ceiling for punitive damages apportioned to Defendant

14

Hawkins is $12,000, which is three times the compensatory damages relating to Defendant Hawkins' conduct.

## A.

Reprehensibility—*i.e.*, "[t]he flagrancy of the misconduct"—is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 & n.23 (1996). Plaintiff was "made whole" through compensatory damages, and the question is whether Defendant Hawkins' conduct was "so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm*, 538 U.S. at 419. Five subfactors are relevant to reprehensibility: the nature of the harm, health or safety risks, financial vulnerability of the victim, whether there was repeated misconduct by the defendant, and the defendant's underlying intent. *See id.* The first and fifth subfactors provide what amounts to modest support for the imposition of punitive damages.

*First*, Defendant Hawkins caused physical harm to Plaintiff. Plaintiff concedes that her injuries were "minor." Answering Br. 50. There was also objective evidence of injuries to Defendant Hawkins and corroborating trial testimony from another officer that both women were "grabbing each other high in their neck area." JA852. Thus, this subfactor favors Plaintiff, but only to a limited extent.

*Second*, Defendant Hawkins' conduct did not pose a risk to the health or safety of the general public, but the District Court found that Defendant Hawkins displayed "blatant indifference" to Plaintiff's "health and safety." JA56. On these facts, where there is near-complete overlap between *actual* physical harm to Plaintiff for purposes of the first

15

subfactor and any *risk* to Plaintiff's health or safety, we need not decide whether risk to Plaintiff alone is sufficient for purposes of the second subfactor. Even if Plaintiff-specific risk is enough, that would not change our view about the overall balancing.

*Third*, Plaintiff did not establish financial vulnerability. This subfactor is neutral.

*Fourth*, the single "extended transaction" at issue in this case does not support a finding of repetitive misconduct. *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 232 (3d Cir. 2005). There was no evidence of a "pattern of behavior" by Defendant Hawkins, and the incident was limited to her "dealings with the plaintiff." *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 191 & n.3 (3d Cir. 2007). Defendant Hawkins' descriptions of the incident during an interview, testimony, and in reports do not count against her as repetition for purposes of this subfactor. Nearly every defendant similarly situated to Defendant Hawkins at this point in a case will be on the wrong side of a credibility assessment after telling her side of the story, and that is not reflective of the type of recidivism discussed in *Gore*. *See* 517 U.S. at 577. To count prior similar statements against these types of defendants as repetition would suggest that punitive damages should be available almost every time a plaintiff prevails. That is not the law. Thus, the fourth reprehensibility subfactor is also neutral.

*Fifth*, the jury's finding of maliciousness is the strongest indicator of reprehensibility. Consistent with that finding, the District Court observed that Defendant Hawkins participated in a "flagrant abuse of authority," which involved what Plaintiff described as choking as well as retaliation by

16

Defendant Hawkins in response to Plaintiff's request for medical treatment and identifying information. JA55. The court also found that Defendant Hawkins' trial testimony was "evasive and combative." JA55.

That said, Defendant Hawkins' post-incident descriptions of the event, which the District Court described as "distorted" and containing "falsehoods," do not weigh heavily on Plaintiff's side for purposes of this subfactor. JA55-56. Defendant Hawkins acknowledged in one of her reports that she applied a "control hold" to Plaintiff, she used the same term during her interview with Defendant Koenig, and she testified at trial that she described her control hold during that interview. JA1303, JA1315. These are not exonerating details for Defendant Hawkins, but they undercut the suggestion that she sought to conceal the physicality of the incident immediately after it happened. Therefore, the fifth reprehensibility subfactor provides the most support for a finding of reprehensibility, and the first subfactor provides limited additional support. Collectively, the balance of these subfactors is consistent with an award of punitive damages, but not nearly the $250,000 approved by the District Court.

**B.**

The disparity guidepost requires us to consider the difference between punitive and compensatory damages. The 62.5:1 ratio approved by the District Court is much too extreme.

Generally speaking, after hundreds of years of using "double, treble, or quadruple damages to deter and punish" in private litigation, a 4:1 ratio "might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425. In

17

considering just how close to that line the punitive-damages award was in this case, we are mindful that much of the Supreme Court's discussion of constitutional limitations on punitive damages has arisen in cases involving more traditional torts instead of federal civil rights. *See, e.g.*, *id.* at 418 (finding it "neither close nor difficult" to reject 145:1 ratio); *Gore*, 517 U.S. at 583; *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991). Yet, because this analysis is driven by fair-notice concerns, the long historical tradition of more limited statutory multiples warrants careful consideration by courts tasked with applying the constitutional standard to punitive-damages awards in cases of all sorts.

More recently, our Court has applied the due-process guideposts to a punitive-damages award based on § 1983 claims that involved constitutional harms. *See Washington*, 124 F.4th at 187. In fairness to the District Court, *Washington* was decided after the court's post-trial opinion. The fact remains that, under *Washington*, a "single-digit ratio" is a constitutional "rule of thumb" even if "not a cap." *Id.* The *Washington* panel affirmed a 10:1 ratio because there was a "special justification": two "sadistic" sexual assaults on a prisoner that were separated by two years—one of which left the plaintiff "soaked with blood"—that were both "reprehensible in every sense of the word." *Id.* at 184, 187. Serious as the jury may have found Defendant Hawkins' conduct to have been during the single incident in this case, the record contains no special justification for such a dramatic departure from the single-digit rule of thumb in this Circuit or the Supreme Court's 4:1 constitutional marker.

The District Court also erred by finding the disparity guidepost to be of "limited utility" because the court believed the compensatory damages were nominal or "essentially

18

nominal." JA59. Nominal damages are "the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory damages," even in cases involving "a violation of an important right." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 288, 290 (2021). The District Court instructed the jury that an award of a single dollar would constitute nominal damages, and that nominal damages would serve as a "recognition" that Plaintiff's federal rights had been violated. JA1180. The jurors found that Plaintiff was entitled to more than recognition. They chose to award $4,000 in compensatory damages based on their findings relating to Defendant Hawkins. This aspect of the verdict was not nominal.

An award of four-thousand times the defined value of nominal damages was not "essentially nominal" either. The term appears to have originated in *Romanski v. Detroit Entertainment, L.L.C.*, 428 F.3d 629, 645 (6th Cir. 2005). The compensatory damages in that case were $279.05. *Id.* at 635. The Sixth Circuit minimized the relevance of the huge ratio between punitive and compensatory damages because it was concerned that the compensatory damages were "unusually low," and that the $9.05 "economic injury was so minimal as to be essentially nominal." *Id.* at 645. We do not have the same concern about the total of $4,000 in compensatory damages that the jury apportioned to Defendant Hawkins. The "essentially nominal" $9.05 from *Romanski* is not analogous. The Sixth Circuit also reduced the $875,000 punitive-damages award against the defendant casino to $600,000 by calculating "sixty per cent of the casino's daily intake at the time of the verdict." *Id.* at 649. We have never endorsed such a metric, which appears to have been addressed to the casino's economic leverage over the plaintiff, and we decline to do so here where

19

Defendants are public servants and at least some of the costs are likely to be absorbed by taxpayers.

The District Court relied on language from *Gore* indicating that, in theory, "low" compensatory damages can justify a "higher ratio" where "a particularly egregious act has resulted in only a small amount of economic damages," "the injury is hard to detect," or "the monetary value of noneconomic harm might have been difficult to determine." 517 U.S. at 582. This case involved serious misconduct, but it cannot be considered "particularly egregious" when compared to *Washington*. *Id.* Nor were Plaintiff's damages hard to detect or calculate. Plaintiff obtained a $4,000 compensatory award for the types of injuries we routinely entrust civil juries to measure, such as physical harm, pain, discomfort, fear, humiliation, and mental anguish, and including that which Plaintiff was "reasonably certain to experience in the future." JA1207. Thus, we do not consider the compensatory-damages verdict, rendered by a jury that received legal instructions not challenged on appeal, to have been "low" relative to Plaintiff's trial presentation. All told, Defendant Hawkins' conduct was not reprehensible or malicious enough to exceed the 4:1 constitutional "line" suggested in *State Farm* and other cases, much less the "rule of thumb" from *Washington*.

## C.

The third due-process guidepost calls for comparison of the punitives award to "civil or criminal penalties that could be imposed for comparable misconduct." *Gore*, 517 U.S. at 583. The point here, as we understand it, is to use any analogous statutory penalties or caps as a rough measure of existing "legislative judgments concerning appropriate sanctions for the conduct at issue." *Id.* Where there is comparable statutory

20

guidance on the books for the public to see, those provisions mitigate fair-notice concerns. *See Willow Inn*, 399 F.3d at 237.

There are no statutory penalties associated with Plaintiff's § 1983 claims. While some Circuits look instead to punitive-damages verdicts when addressing this guidepost, we have not endorsed that approach. *See Washington*, 124 F.4th at 188. After all, "[b]ecause no two cases are truly identical, meaningful comparisons of such awards are difficult to make." *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 457 (1993) (plurality opinion). This challenge is evident from the comparisons drawn by the District Court. Two of the District Court's cases involved nominal rather than compensatory damages. Another two involved non-constitutional remittitur, which is distinct from a constitutional reduction. *See Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999) (explaining that "a constitutionally reduced verdict" is "not a remittitur at all" and does not offend the Seventh Amendment because the jury's fact-findings are left untouched); *see also Cortez v. Trans Union, LLC*, 617 F.3d 688, 716-17 (3d Cir. 2010). Finally, with the exception of *Romanski*, the other cases cited by the District Court involved more severe physical harm and, in some instances, lower ratios that are consistent with our holding.

Thus, there is considerable force to Plaintiff's arguments on appeal that "verdicts in other cases are not civil penalties" under the third guidepost, and that "lists" of verdicts "are of limited helpfulness." Answering Br. 62-63. But we need not go that far. It suffices to say here, as in *Washington*, that the third guidepost is inconsequential in light of the import of the first two. We are obligated to reduce the award of punitive damages, and $12,000 is the constitutional ceiling on these facts.

## V.

We will reverse the judgment against Defendant Koenig because he is entitled to judgment as a matter of law on each of Plaintiff's claims. We will vacate the judgment against Defendant Hawkins and instruct the District Court to enter a reduced award of punitive damages in the amount of $12,000. In light of these holdings, we will also vacate the District Court's award of attorneys' fees and remand the matter so that the court can reconsider that issue in light of this opinion.

*Counsel for Appellants*
Craig R. Gottlieb        [Argued]
City of Philadelphia Law Department


*Counsel for Appellee*
Thomas B. Malone       [Argued]
The Malone Firm